The John Morris Co. v. Burgess.

*Reversed and remanded.*

## The John Morris Company

v.

## Catherine Burgess, Administratrix, etc.

| 44 | 27 |
| 50 | 43¼ |
| 44 | 27 |
| j112 | ³241 |
| j112 | ³242 |

*Personal Injuries—Explosion of Boiler—Prima* Facie *Evidence of Negligence—Duty of Owner—Hostility of Witness, How Shown—Means of Support of Deceased Widow—Evidence—Master and Servant.*

1.   The admission in the case presented, of evidence going to show that the plaintiff had no means of support except from the earnings of her husband, to recover damages for whose death the action was brought, was improper.

2.   It is always competent to show the hostility of a witness to the party against whom he testifies, and where, on cross-examination, he has denied certain acts or words tending to show such hostility, it is competent to contradict him by other witnesses.

3.   The fact of the explosion of a steam boiler, causing injury to a person lawfully present, who sustains no relation of employment or duty to the person operating or controlling the boiler, is *prima facie* evidence of negligence in those having the management of it.

4.   The owner of a boiler, operating it for his own private business, is not in the position of one maintaining a nuisance, and is not an insurer of the safety of the boiler, but is only bound to exercise reasonable care in keeping it in repair and in the selection of persons to operate it.

[Opinion filed February 9, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. FLOWER, SMITH & MUSGRAVE, for appellant.

The court erred in permitting the appellee to show isolated instances of intoxication at periods prior to and remote from the time of the accident. 1 Greenleaf on Evidence, Sec. 52; 7 Am. & Eng. Encyc. of Law, p. 58; Jackson v. Smith, 7 Cowen, 717; P. & P. U. Ry. Co. v. Clayberg, 107 Ill. 644.

The court erred in allowing appellee to prove over objection that she and her family were poor and dependent upon the labor of the deceased for their support. C. & N. W. Ry. Co. v. Moranda, 93 Ill. 302; Pitts. & Ft. W. Ry. Co. v. Powers, 74 Ill. 341; City of Chicago v. O'Brennan, 65 Ill. 160; C. & A. R. R. Co. v. Few, 15 Ill. App. 125.

The court erred in refusing to allow appellant to show the hostility and bias of the witness Stephens. 1 Greenleaf on Evidence, 13th Ed., Sec. 450, and citations; Newton v. Harris, 6 N. Y. 345; Schultz v. Third Ave. Ry. Co., 89 N. Y. 242; Bonnard v. State, 7 S. W. Rep. (Tex.) 862; Staser v. Hogan, 21 N. E. Rep. (Ind.) 911 (915); Commonwealth v. Bryon, 14 Gray, 31; Drew v. Wood, 26 N. H. 363; Hutchinson v. Wheeler, 35 Vt. 340; Atwood v. Welton, 7 Conn. 71; Gaines v. Commonwealth, 50 Pa. St. 319 (326); People v. Goldenson, 76 Cal. 325.

The court erred in allowing the experts to give their opinion as to the cause of the accident, thus leaving nothing for the jury to do but to accept or reject the expert evidence on this subject. Chi. & Alton Ry. Co. v. Springfield & N. W. Ry. Co., 67 Ill. 142; Hoener v. Koch, 84 Ill. 408; C. R. I. & P. Ry. Co. v. Moffitt, 75 Ill. 524; Ill. Cent. Ry. Co. v. Phillips, 55 Ill. 194.

The court erred in giving to the jury the last of plaintiff's instructions, containing this direction: "If you should believe from the evidence that the deceased came to his death by reason of the failure on the part of the engineer of the defendant to keep the machinery in question in reasonable

The John Morris Co. v. Burgess.

repair and condition, as charged in the declaration, and that the deceased at the time of the explosion was without negligence, then the plaintiff is entitled to recover," etc., etc. Kranz v. White, 8 Ill. App. 583 (586); I. B. & .W. Ry. Co. v. Toy, 91 Ill. 474 (476); Losee v. Buchanan, 51 N. Y. 476.

And herein, in a close case, the instructions must be accurate. C. & A. Ry. Co. v. Murray, 62 Ill. 326; Wabash Ry. Co. v. Henks, 91 Ill. 406; T. W. & W. Ry. Co. v. Moore, 77 Ill. 217 (222); L. S. & M. S. R. R. Co. v. Elson, 15 Ill. App. 80 (83).

The court refused to instruct that the jury were not authorized to find the existence of negligence or want of due and proper care on the part of the defendant, from the mere fact of the explosion and injury. This was error. Marshall v. Woods, 9 Vroom, 339 ; S. C., 20 Am. Rep. 394; Losee v. Buchanan, 51 N. Y. 476 (487, 492); Caldwell v. N. J. Steamboat Co., 47 N. Y. 282; Dobbins v. Brown, 23 N. E. Rep. 537; Huff v. Austin, 21 N. E. (Ohio) 864; Iron Ry. Co. v. Mowery, 36 Ohio St. 418; S. C., 38 Am. Rep. 597.

The verdict in the case was the result of passion and prejudice, and not a result in accordance with the weight of the evidence, and should be reversed. C. & A. R. R. Co. v. Barber, 15 Ill. App. 630; C. & E. I. R. R. Co. v. O'Connor, 119 Ill. 586 (595).

Messrs. WING, STOUGH, CARTER & QUALEY, for appellee.

Many of the decisions hold that to entitle the next of kin to more than nominal damages, it should be proven that they were "dependent," either in whole or in part, upon the deceased for support. In other words, the extent to which the deceased supported those who are claiming damages by reason of his death should be shown, as was in the case of Quincy Coal Co. v. Hood, Adm'r, 77 Ill. 68.

In Chicago & Alton R. R. Co. v. Shannon, 43 Ill. 346, this court said : " If, then, the next of kin are collateral kindred of the deceased, and have not been receiving from him pecuniary assistance, and are not in a situation to require it, it is immaterial how near the degree of relationship may be,

only nominal damages can be given, because there has been no pecuniary injury. If, on the other hand, the next of kin have been dependent on the deceased for support, in whole or in part, it is immaterial how remote the relationship may be, there has been pecuniary loss, for which compensation under the statute must be given.  *  *  *

" In the case of collateral kindred here supposed, it would be admissible for defendant to controvert the fact of dependency upon deceased for support; and in the case of the father, to show he was not entitled to the services of his minor child during any of the time of his minority. This must be so because the measure of damages is what the jury, under all the circumstances, ought to deem to be a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person. " Vide, Chicago & Alton R. R. Co. v. Shannon, Adm'r, 43 Ill. 338.

This same language and doctrine was repeated in the case of the Chicago & N. W. R. R. Co. v. Swett, Adm'r, 45 Ill. 204.

" We may readily imagine many cases where persons have been for years disconnected from, and isolated from the family connections, and remained unknown to their kindred, and who, in no reasonable probability, would ever return to or afford any support to their families or relatives. In case of their death there would be no next of kin who could sustain any pecuniary loss by their death, because they could have derived no pecuniary benefit from a continuance of their lives." Chicago & Rock Island R. R. Co. v. Morris et al., Adm'rs, 26 Ill. 400.

It has been held that no contradictory evidence is admissible for the purpose of establishing hostility or friendship on the part of a witness unless such evidence has a direct, certain and unquestioned tendency in that direction. Attorney-General v. Hitchcock, 1 Ex. 91.

The extent to which a witness may be examined as to facts otherwise immaterial, for the purpose of testing the weight and credibility of his testimony, subjecting him to contradiction, if his answers are not satisfactory to the

examiner, is ordinarily within the discretion of the court, no particular rule of law being violated by the decision of the court upon such questions. Miller v. Smith, 112 Mass. 470; Com. v. Lyden, 113 Mass. 452; Wallace v. Taunton Street Ry. Co., 119 Mass. 91.

Again, it has been held that even for the purpose of disclosing hostility or friendship, it is not permissible to inquire into the particulars of a difficulty between a witness and a party to the suit. Evidence of particular collateral facts can not be introduced in any case. This being true, what pretense of justification would there be for permitting an inquiry into the particulars of an occurrence between a witness and a stranger to the suit? Putnam v. State, 61 Ga. 379; Rex v. Watson, 2 Stark. 149; Marks v. Hilsendegen, 46 Mich. 336; Bissell v. Starr, 32 Mich. 229; Watson v. Twombly, 60 N. H. 491, 493; Great West. Turnp. Co. v. Loomis, 32 N. Y. 127; West v. Lynch, 7 Daily (N. Y.), 247; Spencely v. De Willot, 7 East, 108; Tennant v. Hamilton, 7 Cl. & Fin. 122.

Judicial authority is uniform upon the propriety of receiving opinion evidence in cases where the subject-matter is within the range of the peculiar skill and experience of the witness, and where it is one of which the ordinary knowledge and experience of mankind does not enable them to see what inferences should be drawn from the facts.

It is for the trial court to determine whether the subject-matter is of such a character. Dillard v. State, 58 Miss. 368.

Manifestly, the subject-matter was within the range of the skill and experience of the witnesses.

The Supreme Court of Iowa in the case of Middledowne v. Central R. R. Co., 35 Ia. 472, lay down this rule:

" The most comprehensive and accurate rule upon the subject, we believe to be as follows: That the opinion of the witnesses possessing peculiar skill is admissible whenever the subject-matter of inquiry is such that inexperienced persons are not likely to prove capable of forming a correct judgment upon it without such assistance; in other words,

when it so far partakes of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it, and that the opinions of witnesses can not be received when the inquiry is into a subject-matter, the nature of which is not such as to require any particular habits of study in order to qualify a man to understand it. If the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury."

In Rochester R. R. Co., etc., v. Budlong, 10 How. Pr. 289, it was held, that "Upon all questions except those the knowledge of which is presumed to be alike common to all men, whatever may have been their education or employment, the opinion of persons skilled in the particular subject to which the question relates is admissible."

The Supreme Court of Connecticut in Taylor v. Town of Monroe, 43 Conn. 36, held: "The true test of the admissibility of such testimony is not whether the subject-matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience, an aid to the court or to the jury in determining the questions at issue."

Rogers on Expert Testimony, Sec. 7, says: "It is sometimes laid down in a general way that the opinions of experts are admissible only when the subject-matter of inquiry relates to some 'science' or 'art.' It is to be observed, however, that these words include all subjects on which a course of special study or experience is necessary to the formation of an opinion (Stephens' Dig. of Law of Evid., Art. 49, p. 104), and that it is not necessary 'that a specialty to enable one of its practitioners to be examined as an expert should involve abstruse scientific conditions.'" Story v. Maclay, 3 Mon. (Ky.) 480, 483. "Art, in its legal significance, embraces every operation of human intelli-

gence, whereby something is produced outside of nature; and the term 'science' includes all human knowledge which has been generalized and systematized, and has obtained method, relations and the forms of law." Atchison, etc., R. R. Co. v. United States, 15 Ct. of Claims, 140, per Davis, J. So that, although it is generally laid down that the opinions of experts are limited to matters of science, art or skill, yet this limitation is not to be applied in any rigid or narrow sense. Clifford v. Richardson, 18 Vt. 620, 627; Sturgis v. Knapp, 33 Vt. 486, 531. And every business or employment which has a particular class devoted to its pursuit, is said to be an art or trade within the meaning of the rule. Rochester, etc., R. R. Co. v. Budlong, 10 How. Pr. 289, 291; and Taylor v. Town of Monroe, 43 Conn. 36, 43. As has been said in the Irish Exchequer Chamber by Pigot, C. B., "The subjects to which this kind of evidence is applicable are not confined to classed and specified professions. It is applicable wherever peculiar skill and judgment, applied to a particular subject, are required to explain results or trace them to their causes." 1 Irish R. (Com. L.) 211, 218.

Thompson on Trials, Vol. 1, section 615, page 513, lays down this doctrine: "Accordingly, we find that it has been held not a good objection that the question goes to the whole merits, and that the witness is required to give an opinion upon the very question which the jury are to determine. It was so held, where a person, skilled in the art of navigation, was asked to what the loss was attributable. Walsh v. Washington Marine Ins. Co., 32 N. Y. 427, 443. But, in general, the hypothetical questions may and must be so framed as to call for the opinion of the witness upon an assumed state of facts without requiring him in form (though it may require him in substance) to decide the whole controversy. Perhaps a good instance of this is afforded by a case where the action was against a carrier by water, to recover damages for a loss of goods alleged to have occurred through the negligence of the defendant's servants and agents, while towing the plaintiff's barge from

Jersey City to New Haven, through Long Island Sound. It was held that no error was committed by asking an expert: 'With your experience, would it be safe or prudent for a tug-boat on Chesapeake Bay, or any other tide water, to take three boats abreast with a high wind?' Transportation Line v. Hope, 95 U. S. 297."

The question put to the experts in the case at bar, namely, what, in your opinion, was the cause of the explosion? was not submitting to the experts directly the questions to be passed upon by the jury. The cases cited by appellant, C. & A. R. R. Co. v. Springfield & N. W. R. R. Co., 67 Ill. 142, and Hoener v. Kohn, 84 Ill. 408, are not in point. In the case at bar the determination of the cause of the explosion did not necessarily determine the action, but in the cases cited by appellant, the experts, by the improper form of the questions, were permitted to determine the very question the jurors were empaneled to try. In the C. & A. R. R. Co. v. Springfield R. R. Co. case, the court say: "By this we do not mean to be understood as holding that it is incompetent for experts, such as engineers, to give their opinion in this case in respect to matters which may form the proper ingredients of a verdict, but what we mean is that where the witness is an expert, and it is competent for him to give an opinion as to such ingredients of a verdict, while it is not competent to ask the opinion of the witness in such a way as to have it cover the very question to be found by the jury." The error in the cases cited by appellant was in the form and manner of the inquiry, and not that the subject-matter was one upon which expert opinions were inadmissible.

Moran, J. This action was brought by appellee, who is the widow and administratrix of George W. Burgess deceased, to recover damages for his death, which was occasioned by the explosion of a steam boiler or boilers owned and operated by the appellant company. The boilers which exploded were situated at the rear of the building fronting on Monroe street, known as 118 and 120 East Monroe street,

Chicago. At the time of the explosion deceased was work-
ing as a teamster, and was upon his wagon waiting for a
load (from a business house which he was serving) in the
public alley south of and adjoining the building in which
the boiler or boilers which exploded were located. The
effect of the explosion was to throw deceased from his
wagon across the alley, and to inflict injuries upon him
which resulted within a few days in his death.

Upon the trial of the case defendant introduced evidence
tending to show that the boilers were in good condition and
repair and under the management of a competent engineer.
Plaintiff introduced evidence tending to show that the boil-
ers and appliances connected therewith were not in good
order and repair, and evidence tending to show that the
engineer in charge thereof, was in the habit of getting
intoxicated, and was negligent, unskillful and incompetent.
The jury, under instructions from the court, returned a ver-
dict against the appellant for the amount of $5,000, and the
record is brought here and various errors assigned relating
to the admission of improper evidence and the exclusion of
proper evidence and to the instructions given and refused
by the court.

As to the admission of improper evidence, the court per-
mitted the following question to be asked and answered by
the administratrix when she was upon the stand, over the
objection and exception of the appellant: "Q. What were
the sources of your support and your children at the time
of this explosion?" "A. None, except my husband."
This evidence was of the same kind and had the same tend-
ency as that held inadmissible in C. & N. W. R. R. Co. v.
Moranda, 93 Ill. 302. There the widow of the deceased was
permitted to prove that at the time of the death of the hus-
band, Moranda, she and her children had no other means of
support save that arising from his daily earnings. The
court said: "It was entirely proper to show the amount of
his usual earnings, and that plaintiff was his wife in life, and
that they had minor children, whom he was bound by law
to support and who usually shared his income, but it was

wholly immaterial whether such next of kin had or had not other pecuniary resources after his death," and for the error in admitting that evidence the case was reversed and remanded for a new trial. There is nothing in the circumstances or in the manner of asking or answering the question objected to in this case, which takes it out of the rule thus established by the Supreme Court.

As to the point of the exclusion of competent evidence offered by the defendant, a witness named Stevens, gave testimony which was material and important and in its tendency damaging to the defendant. It was proved on cross-examination that he was discharged by the defendant company from its employ prior to the happening of the accident. Further to show his feeling of hostility to appellant he was asked if he did not, after the explosion, visit several persons who were named, all of whom were employes of the John Morris Company, and some of whom were injured by the explosion, and advised those persons to quit the employment of the company and to sue it for injuries received on the occasion of the accident, and promise them assistance in the way of procuring a lawyer, and the witness denied so doing. One of the parties whom it was contended he had thus approached was put on the stand and he was asked whether Stevens visited him, and asked to state to the jury what he, Stevens, said to him. This was objected to, and the court ruled that it was immaterial. Counsel for appellant then offered to prove by the witness on the stand and by several other witnesses, naming them, that they were all visited by Stevens and urged to leave the employment of the John Morris Company and bring suit against it for damages; and the court excluded the evidence on the ground that it was immaterial. The hostility of a witness to the party against whom he is called is always pertinent upon the question of the decree of credibility that is to be extended to him by the jury. Where the witness, on cross-examination, denies the doing of acts or the speaking of words that tend to indicate his hostility, it is competent to contradict him by witnesses. It is always competent to show that a witness is

hostile to the party against whom he is called. We think the proof offered would tend to show unfriendly feelings on the part of the witness toward the company, and it therefore was competent and should have been admitted. Atwood v. Welton, 7 Conn. 71; Commonwealth v. Bryan, 14 Gray, 31; Hutchinson v. Wheeler, 35 Ver. 330; Moline Wagon Co. v. Preston & Co., 35 Ill. App. 358.

The appellant contends that besides these errors the court erred in refusing to give, at the request of appellant, the following instruction :

" The mere fact that the boiler in question exploded, causing injury to the plaintiff, is not in this case and under the relations existing at that time between plaintiff and defendant, as set forth in the declaration, even *prima facie* evidence of negligence or want of due and proper care on the part of the defendant, either in respect to the condition or management of said boiler ; and the jury are not authorized to find the existence of such negligence or want of due and proper care from the mere fact of such explosion and injury."

Appellant says that the rule announced in Illinois Central R. R. Co. v. Phillips, 49 Ill. 234, that the explosion of a steam engine is *prima facie* evidence of negligence, is to be confined to cases of explosions of engines operated by common carriers, such as railroads, steamboats, etc., and that it does not apply to those who operate stationary engines for the purpose of furnishing power in the transaction of ordinary private business. The Phillips case was twice before the Supreme Court and is reported first in 49 Ill. 234, and on second appeal in the 55th Ill., at page 194.

It does not appear that the person injured by the explosion of the boiler of the railway engine in that case was a passenger. True, he was at the depot of the company, and probably on lawful business, but the inquiry and discussion in the Supreme Court related to the extent of care due from the company to members of the community not under its care as passengers. The rule laid down by the Supreme Court when the case was before the court first—that it would be improper to say to the jury that the mere fact that the

boiler of the engine in question exploded, causing injury to the plaintiff, was not *prima facie* evidence of negligence or want of due and proper care on the part of the defendant— was challenged in argument and again considered by the Supreme Court on this last appeal. It was then assumed that the court had in a former opinion held that the mere fact that the boilers exploded was *prima facie* evidence of negligence.

"There is no great hardship imposed on appellant in presuming negligence upon proof of the explosion. It may be easily rebutted if untrue. Such a presumption, however, is prompted by motives of public policy and is necessary for the promotion of the public safety. We know explosions happen; that they are the exception, not the rule. We know that boilers manufactured of good material and carefully managed by skillful and prudent men, carefully tested, thoroughly repaired when defective and closely observed to discover indications of weakness, rarely explode. There are mysterious explosions assignable to no known cause. This is only the conclusion of what is comprehended in the general rule, and should not forbid inferences deducible therefrom. No sane man can doubt that explosions generally result from defective iron, corrosion or deterioration of the boiler, or its mismanagement. Such facts proved would constitute negligence. Common observation and the natural operation of the mind force the conclusion that this fearful rending of a boiler into a hundred pieces is generally caused by the omission of some duty."

The court go on at considerable length to justify and sustain the conclusion that proof of the explosion is *prima facie* evidence of negligence, and that the burden is upon the owners or operators of the boiler to prove that it was in good condition and managed and operated with care.

The question really before the court on each appeal was whether it was proper to instruct the jury that the mere explosion was not *prima facie* evidence.

In the T., W. & W. Railway Co. v. Moore, administratrix, 77 Ill. 217, the question of whether the bursting of a boiler

The John Morris Co. v. Burgess.

would be *prima facie* evidence of negligence on the part of the company, was again presented to the Supreme Court, and it was held there that the doctrine did not apply where the action was brought to recover for an injury received by the engine driver himself, for the reason that he managed and operated the boiler, and if it was defective or improperly managed, it must have resulted from his lack of ordinary care or of ordinary skill; hence the explosion would not make out a *prima facie* case against the company. And in distinguishing the Phillips case, the court said:

"It will be observed that in the Phillips case, the person injured was a bystander who was not in the employ of the company and in no manner connected with it. Under such circumstances it was very proper to hold that the explosion made out a *prima facie* case of negligence, for the reason that the company would be liable if the explosion occurred on account of defects of the engine or through the negligence of the engine driver." And the case was reversed for giving, at the request of the plaintiff, an instruction that the bursting of the boiler was *prima facie* evidence of negligence.

It must, we think, be concluded from these cases that the doctrine that the explosion made out a *prima facie* case of negligence is not to be confined to cases of explosions by common carriers or to injuries to persons to whom they owed particular or special care; but that where a bystander, lawfully present on his own business, was injured by the explosion of a boiler, such explosion made out a *prima facie* case of negligence, and imposed upon the owner or operator of the boiler the duty of discharging himself from the consequences of the explosion by proving that he had exercised ordinary care in the selection, repair, management and operation of the boiler.

Counsel for appellant has called our attention to the fact that in other States a distinction is drawn between explosions of boilers operated by common carriers and stationary boilers and engines operated in private business. This distinction is made in New York and in Ohio. Losee v.

Buchanan, 51 N. Y. 476; Dobbins v. Brown, 23 N. E. Rep. 537; Reiss et al. v. The N. Y. Steam Co., 28 N. E. Rep. 24; Iron R.R. Co. v. Mowery, 36 Ohio St. 418; Huff v. Austin, 21 N. E. Rep. 864. In view of the expressions of our Supreme Court we do not feel authorized to adopt the distinction taken by the New York and the Ohio cases. We see no good reason for doing so. We believe that the public safety will be better secured by adhering to the rule which we understand to be established in this State, that the explosion of a steam boiler, causing injury to a person lawfully present who sustains no relation of employment or duty to the company or individual operating and controlling the boiler, is *prima facie* evidence of negligence in those having the management of it, and casts upon them the burden of showing that there was no lack of care and diligence on their part. It was therefore no error to refuse the instruction asked.

The presumption of negligence arising from the bursting of the boiler may be rebutted by its being shown that those responsible for its management used proper diligence in furnishing and maintaining in repair suitable machinery, and employed servants who had ordinary fitness and competency for the performance of their duties. The owner of a steam boiler operating it for purposes of private business is not to be put in the same category as one who maintains a private nuisance, as the keeper of gunpowder or other violent explosive. The keeper of a powder magazine may be liable for the consequences of an explosion whether the same was carefully kept and managed or not. The question of care or want of care is not involved in an action for injuries resulting from a private nuisance. Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322. The owner and operator of a steam boiler is not an insurer of the absolute safety of the boiler nor a warrantor of the absolute competency of his employes. The law devolves upon him the duty of exercising ordinary care and diligence to furnish suitable instrumentalities and appliances and to keep the plant free from defects which are dangerous and to select for its operation

and management skillful and prudent servants.   This is the extent of the burden upon him.

At the request of the plaintiff the court gave to the jury the following instruction:

" The jury are instructed by the court that it was not only the legal duty of the defendant to secure and obtain for its manufacturing business reasonably good and safe machinery, and to obtain and secure a reasonably competent and skillful engineer to control, manage and operate such machinery in the first instance, but it was also the legal duty of the defendant and its engineer intrusted with the control, operation and management of such machinery, to give all reasonable care and attention to maintain such machinery in reasonable repair and condition; and if you believe from the evidence that the deceased came to his death by reason of a failure on the part of the engineer of the defendant to keep the machinery in question in reasonable repair and condition, as charged in the declaration, and that the deceased at the time of the explosion was without negligence, then the plaintiff is entitled to recover," etc.

This instruction placed a heavier burden upon the defendant than the law imposes upon it.   If it exercised all reasonable care and attention to keep the machinery in repair and condition, it discharged its whole duty, and in such case if the explosion occurred, the defendant, having exercised such reasonable care and diligence, would have been without liability.   The instruction makes the defendant liable at all events if the engineer, in fact, fails to keep the machinery in question in reasonable repair and condition.   Between actually keeping it in such condition and exercising ordinary and reasonable care to keep it in such condition there is a manifest and wide difference.   The one proposition excuses the owner from liability where he has exercised all reasonable care and diligence in and about the selection, maintenance and repair of the plant and the employment of skillful servants in the operation of the boiler, and such is the law; while the other would make him liable for the consequence of an explosion though in view of the evidence

he has not been guilty of negligence, which, as we have seen, is not the law.

There was in this case on the question of the care and diligence of the defendant a conflict in the evidence. It was the very crucial point in the case on which the defendant's liability or non-liability must necessarily turn. It is essential under such circumstances that the instructions to the jury giving them the law upon such questions should be accurate. The one under consideration announces a wrong principle, and we regard it as necessarily misleading, and as the most serious of the errors made in the trial of the case. The judgment will be reversed and the cause remanded.