(No. 11240.—Reversed and remanded.)

JOHN WENDZINSKI, Defendant in Error, *vs.* THE MADISON COAL CORPORATION *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918.*

1. MINES—*employer is not relieved of duty to instruct because miner has been granted certificate of competency.* Under the Mining act the duty of instructing miners in respect to explosives is a positive one, and the employer is not relieved of the duty simply because the miner holds a certificate of competency and qualification; but where the declaration charges common law negligence the certificate is admissible on the question whether the employer knew that a certified miner needed such instruction.

2. SAME—*custom not to instruct does not relieve employer of his positive duty, but such custom may be proved on the question of negligence.* The fact that it is the universal custom among neighboring mines not to instruct certified miners in the matter of placing and firing shots does not relieve an employer of his duty under the positive provisions of the Mining act, but where the custom is not obviously unreasonable or dangerous, evidence thereof is admissible under counts charging common law negligence.

3. SAME—*testimony cannot be impeached by proving charges of witness' declaration in another suit.* In an action by an injured miner charging negligence at common law and a violation of the Mining act by his employer, the testimony of a witness who was working with the plaintiff at the time of the explosion which caused the injury cannot be impeached by proving, on cross-examination, the charges of the witness' declaration in his own action against the employer.

4. SAME—*when an instruction that miner's certificate of competency does not prevent recovery for injury is misleading.* In an action for damages where the declaration charges both a violation of the Mining act and common law negligence, an instruction that if the plaintiff has proved his case as alleged in the declaration the

fact that he has a miner's certificate of competency does not prevent a recovery is misleading in eliminating a possible defense to the charge of common law negligence, and is also objectionable in referring the jury to the declaration to determine whether the plaintiff has proved his case.

5. SAME—*section 29 of the Mining act gives no right to civil action against the mine manager.* Sub-section (*c*) of section 29 of the Mining act, giving a right of action to any person injured because of a willful violation of the act, has reference to an action against the employer, only, and does not extend to the mine manager or other employee whose act or neglect is claimed to constitute such violation. (*Grannon v. Donk Bros. Coal Co.* 259 Ill. 350, approved.)

6. SAME—*effect where mining company rejects the Workmen's Compensation act.* Where an action for damages is brought by an injured miner against the mining company and its mine manager, jointly, the fact that the company has rejected the Workmen's Compensation act does not relieve the plaintiff of the duty of proving negligence against the company, nor does it deprive the mine manager of any of the common law defenses to such an action, even if he could rightfully be joined with the company as a defendant.

7. STATUTES—*where the language is ambiguous, statute will be construed to prevent injustice.* Where the legislative intention is doubtful, the ambiguous language in a statute will be so construed as to reach a reasonable result and prevent hardship or injustice.

DUNCAN, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

CHARLES H. BURTON, and CHARLES W. BURTON, (JOHN G. DRENNAN, of counsel,) for plaintiffs in error.

WILLIAM P. SMITH, and TERRY, GUELTIG & POWELL, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John Wendzinski, a miner employed by the Madison Coal Corporation, which had elected not to provide and pay compensation according to the Workmen's Compensa-

tion act, lost his eyesight by the explosion of a cartridge while it was about halfway back in a hole four feet deep, which he had bored for the purpose of shooting down coal. He brought a suit in the circuit court of Madison county against his employer and William Turton, mine manager, and J. F. Anderson, assistant mine manager, for damages resulting from his injury. Upon a trial there was a verdict for $15,000 against the three defendants. A motion for a new trial was made, whereupon the plaintiff dismissed the suit as to J. F. Anderson, and the motion was denied and judgment was rendered on the verdict against the corporation and Turton. The Appellate Court for the Fourth District affirmed the judgment, and a writ of *certiorari* was awarded to bring the record to this court for review.

The cause was tried on an amended declaration consisting of three counts, the first of which charged that the explosion was caused by the willful failure of the Madison Coal Corporation, by its manager and assistant mine manager, to instruct the plaintiff concerning the proper handling of explosives which he was required to handle. The second and third counts charged liability against the defendants for negligence at common law, and alleged that the plaintiff was a foreigner who had recently come to this country and was unacquainted with the English language and inexperienced in the use of powder, which the defendants knew or could have known by the use of ordinary care, but they failed to instruct him in the proper manner of doing his work and handling powder, and as a result of the defendants' negligence he improperly attempted to tamp the cartridge into place and received the injury.

The plaintiff was born in Posen, in Poland, and was thirty-two years old at the time of the injury. He had worked two or three years in coal mines in Europe and had bored holes for firing shots but had never handled explosives, that work being done by shot-firers. He came from Germany to Glen Carbon, where the coal mine of the Madi-

son Coal Corporation is situated, and obtained a certificate
from the miners' examining board that he had given satis-
factory evidence that he had worked in coal mines at the
face for not less than two years, and the board certified to
his competency and authorized him to seek and accept em-
ployment as a coal miner. On February 6, 1913, he was
employed by the Madison Coal Corporation as a miner in
its mine No. 4, where he worked until the mine was shut
down in April, 1913, and a short time afterward he was em-
ployed by the same corporation in its mine No. 2, where he
remained at work at the face of the coal for several months
until he was injured, on October 20, 1913. No shot-firers
were employed in the mine, but the miners bought their own
powder, drilled their own holes, made their own cartridges,
placed and tamped the cartridges and fired the shots. J. H.
Miller was mine manager of mine No. 4 and William Tur-
ton was mine manager and J. F. Anderson assistant mine
manager of mine No. 2. The plaintiff was given no instruc-
tion by Miller, Turton or Anderson with reference to the
manner in which he should place, load, drill, tamp or fire
shots at his working place in the mine.

Section 20 of the Mining act defines the powers and
duties of the manager, and paragraph 14 of clause (a.) re-
quires him to give attention to and instructions concerning
the proper storage and handling of explosives in the mine,
and the first count charged a willful failure to perform that
duty. Section 1 of the act of 1908 prohibited the employ-
ment of any person as a coal miner without first having
obtained a certificate of his competency and qualification
from the miners' examining board. It was contended that
the plaintiff having obtained such a certificate, the defend-
ants might assume his qualification and competency and his
knowledge of the proper method of placing and firing shots,
and were therefore relieved of the statutory duty of in-
structing him in the proper storage and handling of explo-
sives. The duty to give instruction is a positive one en-

joined by statute, and the employer is not relieved of the duty simply on the ground that the board of mine examiners has granted a certificate of competency and qualification. So far as the first count is concerned the certificate did not tend to prove any defense. As to the second and third counts, charging negligence at common law, the certificate was competent evidence on the question whether the defendants knew, or would have known by the use of ordinary care, that a miner holding such a certificate was ignorant and required instruction in the proper manner of doing his work. The corporation having elected not to provide and pay compensation according to the Workmen's Compensation act was deprived of certain defenses, but plaintiff was not relieved by the statute from proving negligence of the defendants, and as to either of the common law counts the defendant Turton was entitled to his common law defenses of contributory negligence, assumed risk and fellow-servant. Both by the declaration and the evidence the plaintiff was improperly doing his work at the time he received his injury, and the question of contributory negligence was available to Turton under the common law counts.

The defendants offered to prove by the State mine examiner of the district and the county mine inspector that in the operation of all mines in that district, including mines in Madison county and adjoining counties, at no time were practical miners instructed in reference to the manner in which the miner should place, load, drill, tamp and fire shots at his working place in the mine, nor was a certified miner instructed how to place his shots, drill his holes, make his cartridges, tamp the cartridges, place the fuse or squib and light and fire the same, and the offered evidence was rejected. The custom and practice, although universal and well known, could not affect the positive provisions of the statute or relieve defendants of a statutory duty, but were admissible under the common law counts on the issue of negligence of the defendants. If it was a general, uniform

and well known custom not to give further instruction to a certified miner, the custom was not obviously unreasonable or dangerous, and the evidence was admissible under the common law counts. *St. Louis Nat. Stock Yards* v. *Godfrey*, 198 Ill. 288; *Donk Bros. Coal Co.* v. *Thil*, 228 id. 233; 29 Cyc. 609.

Anton Foucheck, buddy of the plaintiff and working with him at the time of the injury, was a witness for the defendants and his account of the occurrence was different from that of the plaintiff. He had worked in the mine for fifteen years and had brought a suit against the corporation which was settled during the trial of this case and he received payment of the amount agreed upon. On cross-examination he was asked if he had not made certain charges in his declaration to which his attention was called and which were inconsistent in some respects with his testimony, and the court admitted the evidence for the purpose of impeachment. The alleged matter of impeachment was not in any paper or writing signed by the witness and did not come under any rule of evidence for the impeachment of a witness. The declaration was the product of the attorney, and it was not even necessary that proof of the charges be made by the testimony of the witness. The court erred in permitting the cross-examination.

The court at the instance of the plaintiff gave this instruction:

"The court instructs the jury that if the plaintiff has proven his case as alleged in the declaration, then the mere fact of his having applied for and obtained the miner's certificate of competency introduced in evidence does not prevent the plaintiff from recovering."

Counsel for plaintiffs, especially in this class of cases, persist in asking for an instruction of this kind although it has been criticised and condemned and more than one judgment has been reversed because of it. The instruction was wrong and misleading because it eliminated a defense,

good at least as to Turton under the second and third counts, charging negligence at the common law. The fact that the instruction did not direct a verdict does not relieve it of its objectionable character, and the court should not have left it to the jury to determine whether the plaintiff had proved his case as alleged in the declaration.

At the close of the evidence for the plaintiff and at the conclusion of all the evidence the defendant William Turton tendered an instruction directing the jury to find him not guilty, and the instructions were refused. In the case of *Grannon* v. *Donk Bros. Coal Co.* 259 Ill. 350, it was said that sub-section (*c*) of section 29 of the Mines and Miners act, under which the first count was framed, applies only to the employer; but it is argued that this was not a construction of the statute, because the action was against the mine operator alone and the question of a joint liability was not material to the decision. There was a count alleging common law negligence and five counts based upon the Mines and Miners act, and there was a general verdict for the plaintiff followed by a judgment. It was contended that a verdict should have been directed for the defendant as to the common law count because the plaintiff was guilty of contributory negligence, as a matter of law, under the provision of the Mining act that every miner should sound the roof of his working place before commencing work, to make conditions safe, and should prop and secure his place. In answering that argument the court said that some of the provisions of the act apply to the miner, others to the operator or owner alone, and some might be applicable to all persons, and to illustrate the fact that not every part of the act applied to all persons it was said that sub-section (*c*) applied only to the operator. While it was not essential to the decision of the case the statement was not purely incidental, and, whether the construction of the statute was necessarily involved or not, the construction given was correct. It is true, where the General Assembly has expressed

an intention in language which is clear and unambiguous there is no room for construction, and the legislative will must be given effect if not in violation of constitutional right, although productive of injustice; but where the intention is doubtful, arguments on the ground of absurdity and injustice will be considered and ambiguous language will be construed so as to reach a reasonable result and prevent hardship or injustice. *Loverin* v. *McLaughlin,* 161 Ill. 417; 36 Cyc. 1111; Sutherland on Stat. Const. sec. 324; Endlich on Interpretation of Statutes, sec. 295.

Section 29 first declares in sub-section (*a*) that any willful neglect, refusal or failure to do the things required to be done by any section, clause or provision of the act on the part of the person or persons required to do them shall be deemed a misdemeanor, punishable by a fine not exceeding $500 or by imprisonment not exceeding six months, or both, at the discretion of the court. Sub-section (*c*), on which the first count was based, changes the language and does not declare that a cause of action shall arise against any person or persons required to do any of the things enjoined by the act to be done, but simply declares that a right of action shall accrue for any injury to person or property occasioned by the willful violation of the act or willful failure to comply with any of its provisions. It is simply declaratory of a right to a civil action, and the change in the language is warrant for saying that the General Assembly did not intend any such unjust result as a recovery against a mine manager by virtue of that sub-section, which would shock the sense of natural justice and lead to hardship and unreasonable results. The employer engaged in the business of mining coal may justly be held liable in a civil action for a failure of duty. He can insure against his liability, count such insurance as an expense of his business and regulate his business accordingly; but to say that an employee working for wages would have to imperil the earnings of a lifetime and become liable, in case of death,

for damages not exceeding $10,000, or for damages amounting to $15,000 in this case, on account of an error of judgment, would be manifestly unjust. The courts, in order to give effect to the purpose of the act, have given the word "willful" a meaning of a merely conscious failure to do some act without any wrongful or evil intent. The question whether a place is dangerous and ought to be marked is to be submitted to a jury, and the judgment of the mine manager on that question goes for naught. *Odin Coal Co.* v. *Denman,* 185 Ill. 413; *Catlett* v. *Young,* 143 id. 74; *Donk Bros. Coal Co.* v. *Peton,* 192 id. 41; *Davis* v. *Illinois Collieries Co.* 232 id. 284; *Mertens* v. *Southern Coal and Mining Co.* 235 id. 540.

Sub-section (*a*) makes a willful failure to do the things required by the act a misdemeanor, which is a violation of public law and an offense against the public. Every person required to do any act is included, and the penalty for the misdemeanor is intended to secure the public right. It may be conceded that where a statute is designed for the protection of individuals or a class of individuals, the penalty for the offense against the public is not exclusive and an action for the private injury may be maintained, but any doubt as to the application of that doctrine to this case or as to the legislative intent derived from the language used and the consequences, as already stated, is at once dispelled by reading the whole sub-section relating to the civil action, which is as follows:

"(*c*) For any injury to person or property, occasioned by any willful violation of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure as aforesaid, a right of action shall accrue to the personal representatives of the person so killed for the exclusive benefit of the widow and next of kin

of such person and to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives not to exceed the sum of $10,000 : * * * *Provided,* that if and whenever there shall be in force in this State, a statute or statutes providing for compensation to workmen for all injuries received in the course of their employment, the provisions thereof shall apply in lieu of the right of action for damages provided in this act."

The proviso restrains any generality in the language of the section, because a mine manager could not come within the proviso under any circumstances or conditions. The provisions of the Workmen's Compensation act are to apply in lieu of the right of action for damages provided in the act, and that right of action is necessarily against the employer and no one else. The fact that the employer in this case had elected not to provide and pay compensation, of course does not affect the question of the legislative intention. There was no cause of action against the defendant William Turton, and the instructions tendered by him should have been given.

As there was no joint liability, the propriety of joining defendants where there is such a liability is not involved, and the case of *Republic Iron and Steel Co.* v. *Lee,* 227 Ill. 246, which was an action against joint tort feasors, does not apply.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.          *·Reversed and remanded.*

Mr. JUSTICE DUNCAN, dissenting.