Karl Anderson, a Minor, by His Next Friend, Karl John Anderson, Plaintiff-Appellant, v. Marjorie Anderson, et al., Defendants, General Motors, Inc., et al., Certain Defendants-Appellees.

### Gen. No. 11,529.

Second District, First Division.

January 29, 1963.

Rehearing denied February 19, 1963.

Charles M. May, of Waukegan, for appellant.

Vogel & Vogel, of Chicago (L. H. Vogel and Dom J. Rizzi, of counsel), and Gates W. Clancy, of Geneva, for appellees.

SMITH, J.

While in his extreme nonage Karl Anderson was severely injured when he was run over by a car driven by his mother. He was but two at the time of the tragedy. Karl was riding in the front seat and fell out and then under the car as she was backing out of a driveway. No one else was present and she was not aware that Karl was missing until it was too late. The date was November 26, 1955. An uncle of Karl's, as next friend, filed suit against his mother on May 20, 1957, charging her with wilfully and wantonly causing his injuries. His mother was then the only defendant. However, about a year and a half later, Karl moved to make General Motors, Inc., Cadillac Motor Car Division, and Les Bierk Chevrolet, Inc. additional parties defendant, and on March 13, 1959, his complaint was amended by adding two counts in which they were so named. Karl is still the only plaintiff but there are now three defendants. The count as to General Motors attributed the accident to their negligence in manufacturing an automobile with a defective door mechanism. Plaintiff's theory was that such defect

caused the door nearest him to fly open causing him to fall out. With regard to Les Bierk, the agency from which the Cadillac was purchased, they were charged with negligently failing to detect such defect before delivery and afterwards failing to correct it. A jury found for all defendants. Plaintiff's appeal is only as to General Motors and Les Bierk.

■ Karl's principal assignment of error involves the use by them of his complaint against his mother. Karl's mother, as we have seen, was a codefendant with them at the trial so that this earlier charge against her of wilful and wanton misconduct was no particular secret. Notwithstanding, such was introduced by them over objection and read to the jury with the time lag of almost two years in making them codefendants duly noted.

Defendants defend this tactic by telling us that the inferences to be drawn from the first complaint constitute judicial admissions that Karl's mother was the cause of his injuries, thus exonerating them, and further, that it tended to show that the only persons who had knowledge of the facts "did not believe that the accident was caused by an alleged defective door popping open in and of itself."

■■ We need hardly digress with citations that the pleading of a party may be used against him. This is so for the simple reason that the pleading *is* the pleader's product, and hence any admissions therein are considered his. However, an infant's complaint, by definition, cannot be his product and Karl's complaint against his mother was obviously not his. True, he *is* the plaintiff—the complaint *is* his, but it is not his in the sense that he had anything to do with it. An infant cannot be bound by the admissions of others. As was said in Stolte v. Larkin, 110 F2d 226, "A guardian of a minor cannot make an admission affecting substantial rights of the minor so as to bind the minor. The rule applies as to admissions in pleadings where the

143

minor is either plaintiff or defendant." Defendants do not dispute this. They agree that Karl could not have conveyed his remembrance of things past to anybody, so that his complaint can be said to be his handiwork and hence usable against him. But they say that it is admissible as an admission by his family, as the only persons with knowledge of the facts, that defendants were not responsible for his injuries and that his mother was.

It is elementary that admissions in pleadings must be against a party to the lawsuit before they become admissible. A glance at the caption tells us that Karl's father, Irving Anderson, is not a party, and of course, the complaint being against the mother, it can hardly be considered hers. What then is the basis for this complaint's admissibility? In answer, defendants advise us that Karl's role as plaintiff is but titular—that the real plaintiff is his family; the complaint their complaint and hence the admissions theirs. The protective rule, they tell us, "does not encompass the allowance of improper or spurious claims, nor is the rule requiring courts to 'protect' the interests of a minor to be construed in such a fashion that the trial court must be blind to afterthought and expediency in efforts of a family to realize upon an unfortunate occurrence." In other words, Irving Anderson in his representative capacity as pater familias is the real plaintiff for the very reason that the protective rule should be cast aside, that is, the happenstance of the complaint against the mother raises sufficient inferences that at one and the same time they can be used to make him a party plaintiff and then used against him.

The rub in this argument is that it is still Karl's complaint, not his father's and being an infant, the admissions seemingly present cannot be used against him. Nor do these admissions transmute Irving Anderson, as father, to the position of coplaintiff so that they can be used against him. That the inferences, as

144

drawn, were pretty damaging can be seen from part of the closing argument of General Motors:

> "And I ask you to draw, as the Court will tell you you should, the proper inferences from this set of circumstances. Bear in mind that Irving Anderson had within his knowledge that on the 26th day of November, 1955, every single thing that he now urges through his brother, to furnish a reason why this family—pardon me, this boy—should be paid. . . .
>
> "Now it may be contended that Irving Anderson does not stand here before you in any capacity in this case. I say to you that is a travesty on justice, a travesty on truth, a travesty on integrity. What father would stand aside and say, 'I have no interest in this matter', under the circumstances such as you have heard here?
>
> "Everything was known to these people when this suit was filed, and whom did they sue? The mother of this child. And upon the records of this court, to their eternal damnation, I say, stands a permanent record here that the mother of this child wilfully and wantonly injured him. And it still stands today as one of the questions which you must decide—I say to their eternal damnation."

This excoriation may be against a person who is not a party, but, we must remember that the person is Karl's father. A father and his infant child, in popular image blur into one, and most people would equate the recovery of an infant as a recovery for the father. Thus admissions used against an infant-plaintiff's father could work to the disadvantage of the infant-plaintiff. Here Karl stands alone as plaintiff. He was the only one alive and present at the trial in a position to bear the brunt, and if the outcome gives a clue, he most assuredly did.

The effect of defendants' stratagem was, in a way, to visit upon Karl the putative sins of his father. This makes for good drama but poor law. We are not aware of any rule of law which holds that the state of mind of a father is the state of mind of his infant son who by personal tragedy has been cast into the role of plaintiff.

We are not unmindful that as judges we should look to the essence of things and behind facade, as defendants suggest. General Motors in their brief state:

> "It is this defendant's theory that this family, casting about for a defendant likely to receive no sympathic consideration from a jury, joined it with no better justification; that no cause of action in fact or in law existed on November 26, 1955, against it, and that the amended complaint joining this defendant, was a complete afterthought arising out of avarice and other base considerations . . . ."

But the reason for the father or someone else making General Motors and the agency codefendants almost two years after the filing of the original complaint against Karl's mother, is quite irrelevant in determining whether their alleged negligence proximately caused the injuries complained of. We will not visit the sins of the father upon the son.

■ Since this matter must be sent back for a new trial one aspect will be dealt with to preclude its reoccurrence. This involves the evidence deposition of Wayne Robins, a foreman of the defendant automobile agency. In chambers, the court advised plaintiff's counsel that only designated parts of the deposition could be read into evidence. This was done. However, on cross-examination counsel for the defendant agency queried the reporter who took the deposition as to whether he had not been instructed by plaintiff's coun-

146

sel to read only selected portions of the transcript while deleting others. The answer was, of course, in the affirmative. To make his point ever so clear, counsel was even permitted, over objection, to ask whether on given pages the reporter had read the entire page.

The obvious purpose of this line of cross-examination was to raise the invidious inference that plaintiff's counsel was having the reporter read text out of context in an attempt to conceal unfavorable evidence. This was manifestly unfair and improper. Counsel for plaintiff had the reporter read only that which he was permitted to do and the excised material was so excised at the direction of the court. Thus, the hint of bald concealment brought out by the cross-examination had no basis in fact whatsoever. His attempt to rectify the innuendo left hanging circumambient in the courtroom air by offering to read the entire transcript was rejected. During the whole course of cross and redirect examination a great many things were said that should have remained unsaid. To avoid another Donnybrook, the cross-examination on retrial should be limited in the respects noted.

Reversed and remanded for a new trial.

McNEAL, P. J. and DOVE, J., concur.