OTIS E. ALLEN, Plaintiff-Appellant, *v.* THE CITY OF OTTAWA *et al.*, Defendants-Appellees.

Third District   No. 78-463

Opinion filed January 29, 1980.

Edward F. Diedrich, Jerome C. Shapiro, and Peter Taubenheim, all of De Kalb, for appellant.

Robert W. Hansen and T. Donald Henson, both of Herbolsheimer, Lannon, Henson and Duncan, P. C., of La Salle, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Otis Allen, plaintiff in the instant case, appeals from a judgment in favor of defendants following a jury verdict for defendants, City of Ottawa and three officers of the Ottawa Police Department.

The action results from a situation developed during the incarceration of plaintiff Otis Allen at the Ottawa police station lockup, at which time Allen suffered a broken leg. By reason of the injury and complications arising therefrom, Otis Allen underwent several surgical procedures and lost more than a year of employment. His action claimed damages in the sum of $150,000 on four counts, on the basis of (1) negligence, (2) willful and wanton misconduct, (3) intentional tort (described in the complaint as "assault"), and (4) negligence demonstrable under the doctrine of *res ipsa loquitor*. As we have noted, the jury found in favor of the defendants in the action.

The record in the case discloses that on August 16, 1975, at approximately 11:30 p.m., officers of the Ottawa police department arrived at the Touch of Class tavern, in response to a call from the owner complaining of a disturbance involving Otis Allen's son, John. Approximately a half hour later, the police were again called. This time Captain Whitney of the Ottawa police department, and a Deputy Smith, not associated with the Ottawa police, arrived at the tavern and took Otis Allen into custody.

What occurred thereafter was in dispute. According to defense witnesses, including the defendants themselves, other police officers, and Deputy Smith, the plaintiff was intoxicated and verbally abusive. He threw a wallet at Captain Whitney, narrowly missing the captain's head. The captain and several officers then proceeded to drag Mr. Allen into the adjoining cell block in the lockup at the Ottawa police station. The defense witnesses asserted that Allen grabbed the door jamb and Captain Whitney pushed on his chest to force him backward into the cell. According to the officers, the plaintiff was, at all times, supported on each

arm by a police officer and was laid gently onto the floor on his back. The officers then proceeded to search Allen and removed the contents of his pockets and his belt from his trousers. Allen was rolled over and his back pockets were searched. The officers testified that no one held onto Allen's legs, and that his legs appeared to be normal at that time. The officers also testified that Otis Allen asked them if he was required to spread his legs, and they replied affirmatively. Allen voluntarily spread his legs and was frisked additionally and then left alone in his cell, lying, at that time, on his stomach.

The officers also testified that they then heard sounds coming from the cell block which they said appeared to be sounds of someone pounding upon and kicking the sheet steel walls and the steel door of one of the cells. Another prisoner, James Carpenter, was in a cell adjoining that of Otis Allen. The noise, the officers said, continued for four or five minutes and subsided. Shortly thereafter, Allen was heard asking for an officer to enter his cell. When one did enter the cell, Allen was observed sitting on his bunk with his right boot removed and his right leg crossed over his left. Allen said that he thought his leg was broken. The officer could see the bone moving under the skin. Allen was then removed to the Ottawa Community Hospital.

According to the testimony of plaintiff Allen, the sequence of events was quite different. He stated he was knocked unconscious from behind after tossing his wallet down on the desk before Captain Whitney, and that he remained unconscious until he awoke in the cell, suffering from a broken leg. The other inmate of the lockup, James Carpenter, testified on behalf of plaintiff Allen, tending to support certain of Allen's allegations.

The injury suffered by Allen was a spiral fracture of the tibia, or large bone of the lower leg, about two-thirds of the way down, and he also suffered a fracture of the fibula, or smaller bone, somewhat higher up, but still below the knee. The fractures failed to heal properly and the leg became infected on several occasions, necessitating numerous surgical procedures and causing Allen much discomfort, as well as loss of employment.

The plaintiff produced as expert witnesses two of his treating physicians, Dr. Neufeld of Ottawa, and Dr. Alameda of Peoria, an orthopedic surgeon, who performed the surgical work on plaintiff Allen. Both doctors, testifying for the plaintiff, stated that the fracture suffered by Allen could only be caused by tortion applied to the leg. Such tortion or twisting would most likely result from the foot being held immobile and the rest of the body, including the leg, twisting. An example of such injury developed by the witnesses was that of a runner or skier suffering such fracture if his foot caught on the ground and the momentum of his body carried him forward as he fell.

The defendants produced as their expert, Dr. Bettasso of Ottawa, a thoracic and general surgeon. Dr. Bettasso, in response to a hypothetical question, essentially recounting the defendants' version of the events in this case, testified that the type of injury suffered by the plaintiff could have been induced by self trauma. Dr. Bettasso's description of the mechanism required to produce the type of injury suffered by the plaintiff did not differ from that of plaintiff's own experts. Dr. Bettasso did add, however, that the immobility of the foot required to cause such a fracture could have been the result of a prisoner catching his foot between the bars of a cell door or could result from a person having his foot held immobile momentarily as a result of his having kicked a wall with it. With the foot held so immobile, mere falling down would provide sufficient tortional force to cause this type of fracture.

Plaintiff contends that the testimony of Dr. Bettasso was improperly admitted into evidence, because the doctor did not qualify as an expert in injuries of the type suffered by the plaintiff. This contention is without merit. The plaintiff contends that Dr. Bettasso is unqualified as an expert because he is a thoracic, or chest surgeon. The record shows, however, that the doctor is also a general surgeon with 16 years experience. At the time of the testimony, he was president of the Illinois Chapter of the American College of Surgeons. Dr. Bettasso testified that he has had considerable experience in orthopedic surgery and has, on numerous occasions, treated injuries similar to the one suffered by the plaintiff. The doctor described the plaintiff's leg fractures as the "classical" result of a certain type of traumatic injury. Moreover, his description of the type of trauma that would cause such fracturing did not differ significantly from the testimony of plaintiff's own medical experts. Dr. Bettasso agreed with Drs. Neufeld and Alameda that the type of fractures suffered by the plaintiff were most likely the result of the foot being held in place and the leg and upper body twisting around it. Typically, such twisting occurs if the injured person has fallen while the foot is held immobile. The only additional comment that Dr. Bettasso made about the injury was that, in his opinion, it was possible for such an injury to occur to a man who, alone in a jail cell, either caught his foot in the bars of the cell door and then fell down, or who fell to the floor while his foot was held immobile for an instant by kicking at a wall.

○ 1, 2 The opinion of an expert is permissible on the basis that such expert witness has peculiar knowledge or experience not common to the world which renders his opinion based on such knowledge and experience an aid to the trier of facts in deciding the case. The knowledge required to qualify one as an expert may be obtained from study, experience or both. (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 912, 323 N.E.2d 418; *Skaug v. Johnson* (1975), 29 Ill. App. 3d 238,

1036

242, 330 N.E.2d 265.) The qualification of a witness to testify as an expert is within the sound discretion of the court and is relative to the particular circumstances of the case. (*Harris v. City of Granite City* (1977), 52 Ill. App. 3d 782, 785, 365 N.E.2d 1034, 1037.) We cannot agree with the plaintiff that the court abused its discretion in qualifying Dr. Bettasso as an expert witness in this case.

All of the police officers who testified as to events in the Ottawa lockup testified, essentially, to the same effect. The testimony was, substantially, that plaintiff Allen was conscious and unhurt when taken to his cell and that he voluntarily moved his legs so that he could be frisked and, also, that Allen could be heard pounding or kicking the walls after he was placed in the cell. Plaintiff Allen claims that he was knocked unconscious before being removed to a cell and remained unconscious until he awoke suffering from a broken leg. As we have noted, plaintiff called as a witness, James Carpenter, who was locked in the adjoining cell on the night of the incident. Carpenter testified to hearing a disturbance in the squad room which lasted four or five minutes. The station then became quiet and he testified he next saw the police carry Allen past his cell. He described Allen at that time as being inactive, although he could not tell for certain whether or not Allen was conscious. After about half an hour to an hour, he heard the man in the next cell moaning and complaining that his leg was broken. Carpenter stated that he had no memory regarding Allen after that. On cross-examination, Carpenter testified that he never saw Allen's face and could not be sure whether Allen was being carried or dragged into the cell.

■■ Defendants attacked the credibility of Carpenter by bringing out the fact that he had been arrested by the Ottawa police on 10 or more occasions. The plaintiff maintains that the admission of such evidence is reversible error. Generally speaking, the fact that a witness has been arrested may not be introduced into evidence to impeach his or her testimony. Only convictions for crimes punishable in excess of one year's imprisonment or convictions for crimes involving dishonesty or false statement may be used for impeachment and then only if the judge determines that the probative value of the evidence of the crime is not substantially outweighed by the danger of unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805.) The fact, however, that a witness has been charged or arrested for a crime may be inquired into when such fact may reasonably tend to show that the witness' testimony might be influenced by interest, bias, or a motive to testify falsely. *People v. Vagil* (1973), 9 Ill. App. 3d 726, 729, 292 N.E.2d 557; *People v. Marichec* (1976), 41 Ill. App. 3d 604, 607, 353 N.E.2d 692.

Plaintiff argues that the cases so holding are distinguishable because in such cases the witnesses were motivated by personal interests that might affect their testimony, while in the instant case, Carpenter had no interest in testifying falsely. While we agree that Carpenter would gain no obvious benefit from testifying against the Ottawa police, we also recognize that questioning a witness about his arrest record may be proper to show his bias as well as interest. "[A] witness * * * in a civil case, may have a motive to testify falsely about a particular matter. No useful purpose would be served in undertaking to enumerate even some of the innumerable motives that may exist. Suffice it to say that evidence of such motive is to be distinguished from that which merely tends to discredit the witness generally." (*People v. Mason* (1963), 28 Ill. 2d 396, 402, 192 N.E.2d 835, quoting 3 Wigmore, Evidence §967, at 186 (1962 Supp.).) As noted in *People v. Mullinax* (1979), 67 Ill. App. 3d 936, 940, 384 N.E.2d 1372:

> "The bias of a witness toward a party is always pertinent to the question of his or her credibility. [Citation.] A witness' interest in the outcome of a case, or hostility toward the defendant, are relevant to a showing of bias or interest, because such feelings of hostility may well influence the manner in which the witness testifies."

In the instant case, Carpenter was questioned only about his arrests by the Ottawa police, not about his record in general. The motive of this questioning was to demonstrate that Carpenter might feel hostility toward the Ottawa police. As noted in *John Morris Co. v. Burgess* (1892), 44 Ill. App. 27, 36:

> "The hostility of a witness to the party against whom he is called is always pertinent upon the question of the degree of credibility that is to be extended to him by the jury."

■ The scope of cross-examination is generally within the trial court's discretion. The widest latitude should generally be allowed in cross-examination for the purpose of establishing bias. (*People v. Mason* (1963), 28 Ill. 2d 396, 403, 192 N.E.2d 835.) Only a clear abuse of the court's discretion resulting in manifest prejudice will constitute grounds for reversal. (*Papageorgiou v. F. W. Woolworth Co.* (1978), 66 Ill. App. 3d 873, 881, 383 N.E.2d 1346.) We find no such abuse of discretion by the court in allowing this line of cross-examination of witness Carpenter.

●■■ The plaintiff also called his wife as a witness. The defendants cross-examined Mrs. Allen regarding a dramshop complaint filed in her name against the Touch of Class tavern. This complaint alleged that Mr. Allen became intoxicated and was involved in fighting at the tavern. The complaint was signed by Allen's lawyer, but was not signed by Mrs.

Allen. We agree with the plaintiff that a plea may not be used as an admission against a person who is not a party to the pleading. In the instant case, Mrs. Allen was alleged to have made the dramshop complaint, and the complaint may not be used as an admission by Mr. Allen who is not a party thereto. (See *Anderson v. Anderson* (1963), 39 Ill. App. 2d 141, 187 N.E.2d 746.) The trial judge recognized this to be the law and admitted the evidence only for the purpose of impeaching Mrs. Allen, who testified that the plaintiff was not, to her knowledge, drunk the evening in question. When the defendants' attorney referred to the complaint as an admission, the trial judge properly instructed the jury to disregard the attorney's remarks. The complaint did not bear Mrs. Allen's signature, and Mrs. Allen testified that she had no knowledge of the complaint. The judge thereupon found the complaint to have been unauthorized by Mrs. Allen. He ruled that the line of questioning was impermissible and directed that it be halted. (See *Wendzinski v. Madison Coal Corp.* (1917), 282 Ill. 32, 37, 118 N.E. 435; compare *Linn v. Clark* (1920), 295 Ill. 22, 30, 128 N.E. 824.) The court did not, however, instruct the jury to disregard the entire line of questioning. We agree with plaintiff that the jury should have been so instructed, given the court's finding that Mrs. Allen had not authorized the complaint. We find no error here, however, which would justify reversal and deem the error to be harmless.

Mrs. Allen testified that she left the Touch of Class tavern at 10 p.m., about two hours before the plaintiff was taken into custody. She described the plaintiff, as of the time she left the tavern, as having been neither drunk nor sober. Thus, she claimed no first-hand knowledge of the plaintiff's sobriety later in the evening, when he was taken into custody. The dramshop complaint was admitted only to impeach this testimony, perhaps by showing that she in fact knew firsthand that the plaintiff was drunk at 10 p.m., or, perhaps, by showing that she later came to learn that the plaintiff had become intoxicated after 10 p.m. Mrs. Allen's opinion of the plaintiff's sobriety on the evening of August 16 and the morning of August 17, was not directly contradictory to the evidence of other witnesses. She testified at trial merely that the plaintiff was neither drunk nor sober at 10 p.m. when she left the tavern.

The bartender at the tavern testified that the plaintiff was intoxicated at the time of his arrest and a nurse at the hospital testified that he was drunk when brought in for treatment of the broken leg early on the morning of the 17th. The bartender's testimony, which would be contrary to the interest of the tavern owner in any dramshop action, established all that the excluded dramshop complaint would have shown. The failure to instruct the jury, therefore, to disregard all questions and answers concerning the dramshop complaint was harmless error in view of the record at this trial.

For the reasons stated therein, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.