(No. 25642.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error *vs.* JOSEPH ROGERS, Plaintiff in Error.

*Opinion filed October 11, 1940—Rehearing denied Dec. 10, 1940.*

MARTIN O. WEISBROD, and GEORGE M. CRANE, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Joseph Rogers, otherwise called Joseph Rodgers, and Stanley Brookman were tried by a jury in the criminal court of Cook county upon an indictment charging they had obtained $500 from Simon Trojar by means of the confidence game, found guilty and sentenced to imprisonment in the penitentiary. Rogers prosecutes this writ of error.

From the evidence it appears that about 10:00 o'clock in the evening of July 23, 1939, Simon Trojar, the complaining witness, a teacher, forty-five years of age, entered a rest room at Columbus drive and Seventh street in Grant Park, where an indecent proposal was made to him by a man later known as Wilson. When Trojar emerged, Wilson spoke to him and they walked together about fifty yards. Suddenly, Brookman and a companion referred to as "the sergeant" appeared, represented themselves as officers and accused Trojar and Wilson of having committed a sex offense. Brookman ostensibly took Wilson to a police station, and the "sergeant" detained Trojar. The "sergeant," emphasizing Trojar's predicament, suggested that a bond be arranged. Trojar protested his innocence and the "sergeant," remarking that the innocent must sometimes suffer in the course of police duties, urged him to try to obtain a bond. Subsequently, Brookman returned, announcing that the police car which had taken Wilson to the station would return for Trojar. Five minutes later, Trojar, told by Brookman and the "sergeant" that they would "give him a break," was permitted to leave. The next day, Brookman called at Trojar's residence and took him to Central Park avenue and Twenty-eighth street where they met the "sergeant" and Rogers (hereinafter referred to as the de-

fendant), who, it was represented, had come from the State's attorney's office. Trojar was informed that a warrant for his arrest had been issued by the State's attorney. The defendant, after confirming the statement that a warrant had issued, left Trojar with Brookman and the "sergeant." Professing a desire not to cause him trouble, the "sergeant" inquired whether Trojar could induce his brother to make bond. Trojar expressed reluctance, and when the "sergeant" announced an intention to talk to his sister-in-law, objected that she was alone. The "sergeant" impressed upon Trojar that he and Brookman were only performing their duty as officers, and that, although $500 would be needed, it would be returned unless Trojar was fined. Accompanied by Brookman, Trojar then went to his safety-deposit box, withdrew the money and gave it to Brookman, who promised to report to Trojar the same evening. On July 26, on the advice of an attorney whom he had consulted upon failing to hear further from Brookman, Trojar attended a "show up," where he identified Brookman and the defendant. The man known as Wilson and the "sergeant" were not apprehended.

Officer John T. Warren testified that he arrested Rogers outside a comfort station in Grant Park about 8:00 o'clock P. M. on July 24, and approximately an hour later, observing Brookman twice enter the same station, arrested the latter. After being detained in the same cell overnight, the defendant and Brookman admitted their previous acquaintance. Over objection, Warren testified that he had known the defendant since 1928, and, on cross-examination, added that he had arrested the defendant in 1934.

Brookman, testifying in his own behalf, denied Trojar's accusation, and his own prior acquaintance with the defendant. He maintained that he had been at a motion picture theatre on July 23, and had been seeking employment on July 24, although he could recall neither the picture he had seen nor the name and address of any place he had visited.

The defendant testified that he had been managing his brother's studio in Detroit where he had been on July 23 and until noon July 24, when he drove to Chicago to obtain music for his brother. Edward Rogers, his brother, corroborated him, but admitted that the purpose of defendant's trip could have been accomplished by a letter or telegram. The defendant, denying implication in the crime and any acquaintance with Brookman, acknowledged, on cross-examination, that when arrested he had given officer Warren a false Chicago address.

The principal contention of the defendant is that the evidence does not sustain his conviction for practicing the confidence game. The statute defining this crime was designed to reach a class of offenders known as confidence men who practice on the unwary an unlimited variety of swindling schemes. (*People* v. *Peers,* 307 Ill. 539.) Any scheme, false representation or swindling operation may constitute a confidence game provided it causes the victim to repose in the swindler a confidence which is the motivating cause for relinquishing his money. (*People* v. *Bimbo,* 369 Ill. 618; *People* v. *Dore,* 339 id. 415; *People* v. *Visconte,* 326 id. 496.) The facts in *People* v. *Angelica,* 358 Ill. 621, are analogous to those in the case at bar, and the decision is controlling here. There, the defendant, exhibiting a star similar to those worn by police officers, and accusing his victim of having committed an offense in a public park, announced he "liked him," would give him a "break," and would arrange his bond, which would be recovered after thirty days, without an appearance in court. The accused was held to have obtained his money by betraying the confidence gained by these representations. In the case before us, the confidence of Trojar was first obtained by Wilson, whose actions and sebsequent representations induced Trojar to accompany him through the park grounds. After this confidence had been obtained Brookman, the "sergeant" and the defendant appeared upon the scene and, by simulating

friendly feelings, lent credence to their pretended efforts to extricate him, Trojar, from his predicament. The appearance of the defendant in the picture as a representative of the State's attorney's office was part of the plan. Having been engaged in a common scheme to obtain Trojar's money by winning and later betraying his confidence, the defendant is liable for the acts and representations of his associates as well as those of himself. *People* v. *Harrington,* 310 Ill. 613.

Trojar was positive in his identification of the defendant before the grand jury and upon the trial. That his identification at the show up had been less certain does not, as defendant contends, warrant a reversal. Trojar's initially hesitant identification of defendant was revealed in detail to the jury, whose function is the determination of the credibility of witnesses and the weight of their evidence. This court will not disturb the jury's decision in the absence of a clear and well founded doubt of the defendant's guilt. *People* v. *Angelica, supra; People* v. *Brady,* 272 Ill. 401.

The trial court overruled a motion of defendant for a new trial on the ground of newly discovered evidence. Defendant offered to prove that, following the show up, Trojar had made a statement further revealing the uncertainty of his identification. Not only would this statement have been merely cumulative, but its existence was disclosed during the trial and its production not demanded. This court has held that newly discovered evidence, as the basis of an application for a new trial, must be of such a character that it will probably cause a different result on a new trial, must not have been discovered, nor discoverable by the exercise of due diligence prior to the trial, and must be material to the issue and must not be merely cumulative. (*People* v. *Buzan,* 351 Ill. 610; *People* v. *Blume,* 345 id. 524.) Also represented, as a second basis for the motion, was the dis-

covery of a statement made by Trojar subsequent to the grand jury hearing, that the defendant had accompanied him and Brookman when they obtained the money. The court would not have been warranted in believing that another trial would have resulted differently by reason of this statement, and properly disallowed the motion.

Officer Warren's testimony that he had known the defendant since 1928 did not necessarily imply a criminal record, unless the implication was injected by defense counsel's extended discussion and emphasized by his disclosure, through cross-examination, that the defendant had been arrested in 1934. Similarly, the court properly ruled against the defendant's question, on cross-examination, whether Trojar's purpose in retaining an attorney was the recovery of his money. This question was beyond the scope of the direct examination, and its answer in the affirmative would have disclosed no more than a personal interest of the witness, which previously had been made known to the jury.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*