(No. 46333.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY GALLOWAY, Appellant.

*Opinion filed November 18, 1974.*

159

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Gail Moreland, Harold Cowen, and George L. Lincoln, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

By a jury in the circuit court of Cook County, the

defendant was found guilty of the unlawful sale of a narcotic drug. He was sentenced to a term of 10 to 20 years' imprisonment in the State penitentiary. The appellate court affirmed the conviction, one judge dissenting. (14 Ill. App. 3d 863.) We granted leave to appeal.

The defendant contends that he was denied due process of law: by reason of the trial court's refusal to permit him to examine the arrest record of the key witness for the State for impeachment purposes and for the purpose of establishing bias and attacking credibility; because of improper cross-examination of the defendant which suggested the commission of a separate crime; and by reason of improper argument of the prosecuting attorney in referring to the defendant as a ghoul and "pusher" and implying that the key witness for the State owed her evidently apparent physical deterioration to the defendant's feeding her narcotics over the years.

On July 23, 1968, Sylvia Carter, a police informant, who was a drug addict and former prostitute, contacted Officer Stanfield of the Chicago Police Department. She had known Officer Stanfield for a period of six years. She advised him that she would be able to make a purchase of heroin from the defendant at a given location for the sum of $40. Miss Carter had known the defendant since 1951.

Officer Stanfield obtained and recorded the serial numbers from $40 in United States currency. He had a police woman conduct a "pre-sale" search of Miss Carter to be certain she had no money or drug of any type on her. Officer Stanfield then gave Miss Carter the recorded money.

Officers Stanfield and Nance next took Miss Carter, by car, to an area near the tavern where she had arranged to make the purchase. She and Officer Stanfield walked towards the tavern; the officer stayed at a point where he had an unobstructed view of the tavern entrance.

Miss Carter crossed to the tavern but did not enter. She gave a signal at the window and the defendant came

out. The officer saw the defendant's and Miss Carter's hands touch twice. The defendant then returned to the tavern, and Miss Carter walked away giving the signal that she had made a purchase from the defendant.

A field test was run, indicating that the powder she had received was heroin. The two officers then arrested the defendant. Officer Stanfield searched the defendant and recovered the $40 that had been prerecorded.

The defendant testified that he operated a barbecue stand; and that about 1 a.m. he had received a telephone order from the tavern in question for two orders of barbequed ribs. He stated that he did not wish to leave his wife alone at the stand at that late hour, so he closed the stand and he and his wife took five orders of ribs to the tavern—the two ordered by the bartender and three extra orders. He further stated that when he left the barbeque stand, he took a handful of money from the cash register; that he was arrested shortly before 2 a.m., was not searched in front of the tavern; that he was taken to a police station and was told to empty his pockets; that he had $172 in bills; and that Officer Stanfield took the money and returned shortly thereafter with $132. He further stated that Officer Stanfield told him at that time that the $40 belonged to him from a sale of narcotics that had been arranged. The defendant was the only witness in his behalf.

The trial commenced on May 28, 1971, and was completed on June 5, 1971. Miss Carter was the key witness for the State. She testified that she was a drug addict but that she was no longer a prostitute; and that she was now working as a cook. She stated that her addiction at the time of the trial cost her approximately $14 a day, but that it cost her $60 to $70 a day in July of 1968. The trial court refused to permit the defense to determine the source of the heroin to satisfy her habit. She stated that she purchased narcotics on the street, had never received money, drugs, promises or favors from the police depart-

ment for her testimony; and that the most recent time she had used heroin was the day before her testimony. She testified as to four different names used by her and further to the fact that she may have used other names as well.

Prior to the trial, defense counsel sought the arrest or police record of the State's key witness, Miss Carter. The trial court reserved its ruling on this request. Prior to the cross-examination of Miss Carter, defense counsel again requested the arrest record. The State's Attorney advised the court that he did not have the arrest record, but that he presumed Officer Stanfield knew of the background of Miss Carter. He also advised the court that Miss Carter had no convictions that could be used for impeachment purposes. Defense counsel stated that the record might show pending charges which would be relevant to show motive or bias in the witness's testimony. The State's Attorney stated that he had asked the witness and the police officer and was told that there were no pending charges between the date of defendant's arrest and the time of the trial. The court indicated it was satisfied. Defense counsel stated: "Well, that might satisfy the Court, but it doesn't satisfy me." The court, however, persisted in its refusal to permit defense counsel's examination of the arrest record.

At the time of the motion for a new trial, defense counsel was made aware for the first time that the witness, Miss Carter, was released from the county jail on May 5, 1971, shortly prior to the time of trial, being freed on a charge of armed robbery. The arrest record was not disclosed until the State filed its brief in the appellate court.

The arrest record indicated that Miss Carter had been arrested over 80 times, commencing in 1948. Most of the arrests were for prostitution or narcotics violations. She was arrested for theft on April 26, 1971, and for armed robbery on April 28, 1971. The armed-robbery charge was stricken upon motion of the State on May 10, 1971. The

theft charges were stricken, again upon motion of the State, on July 14, 1971.

The question of the credibility of the State's key witness, Miss Carter, was, of course, critical to the defense of the case. We have, heretofore, expressed the need for close scrutiny in those cases where the State's case rests upon the credibility of a narcotics addict. (*People v. Bazemore* (1962), 25 Ill.2d 74, 76-77; *People v. Villalobos* (1960), 20 Ill.2d 315, 318.) Nor is the question of credibility significant only when the witness is under the influence of narcotics at the time he or she testifies. The effect of addiction on the ability to observe, accurately reflect and retain what was observed, and the general power and inclination towards truthfulness, all bring into focus the concern over the credibility of the addict's testimony. (*People v. Bazemore* (1962), 25 Ill.2d 74, 76-77; *People v. Boyd* (1959), 17 Ill.2d 321, 326.) Because of the concern over the credibility of an addict's testimony a trial court should, in an appropriate case, exercise its discretion so as to permit the broadest permissible cross-examination relative to the issue of credibility. Included in such cross-examination should be matters suggesting bias or motivation to testify falsely.

The defense was entitled to the examination of the arrest record and the use of several of the arrests to show interest or bias on the part of the witness. While neither evidence of an arrest nor indictment may ordinarily be admissible to impeach credibility generally, an arrest or charge of a crime may be shown, or inquired into, where it reasonably could tend to show that the witness's testimony might be influenced by interest, bias, or motive to testify falsely. (*People v. Mason* (1963), 28 Ill.2d 396, 401.) Officer Stanfield had known Sylvia Carter for over five years; she was an "employee" to help in narcotics cases. Officer Stanfield knew Miss Carter by her aliases as well as the name she used at the trial. Because of her close relationship with the police and particularly the narcotics

division, it is difficult to believe that Officer Stanfield did not know of her pending charges.

We can only conclude from this record that the law-enforcement officer permitted or caused the prosecution to falsely represent the arrest record of Sylvia Carter to the court. Such a practice is so lacking in fundamental fairness as to deprive an accused of due process of law. (*Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173; *People v. Martin* (1970), 46 Ill.2d 565, 567.) The false representation does not have to relate to a material issue; it is sufficient if it goes to the credibility of a witness. *People v. Martin,* 46 Ill.2d 565; *People v. Coddington* (1964), 31 Ill.2d 468, 471.

Given the working relationship between Sylvia Carter and the police officers, including Officer Stanfield, we cannot say what effect her arrest record, including the dismissal of charges against her during the time this case was pending, would have had upon the jury. The error in this case was of constitutional magnitude and not harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

In view of our conclusion above, it is unnecessary to discuss the other issues raised by defendant. Suffice it to say that upon remand, we would not expect the prosecution to jeopardize its case by eliciting testimony of an unrelated crime or by arguing to the jury beyond the confines prescribed by this court.

The judgments of the circuit and appellate courts are reversed and the cause remanded for a new trial.

*Reversed and remanded.*