THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE KIRKWOOD *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 78-1832

Opinion filed March 11, 1980.

Sam Adam, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Nancy Lynn Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

After a jury trial, defendants were found guilty of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2) and each was sentenced to a prison term of seven years. Defendants appeal presenting the following issues for review: (1) whether defendants were denied a fair trial by the admission of evidence of another crime allegedly committed by defendants; (2) whether the trial court erred in admitting into evidence two .22-caliber cartridges where the State's answer to discovery did not specifically list the cartridges; (3) whether defendants were proved guilty of armed robbery beyond a reasonable doubt; and (4) whether the trial court erred by considering incompetent evidence in determining the sentence to be imposed.

We affirm.

On October 30, 1976 at approximately 9 p.m. a service station located at 734 South Western Avenue, Chicago, Illinois, was robbed at gunpoint and shortly thereafter defendants, George Kirkwood and Thomas Seals, were arrested and charged with armed robbery.

Andrew Pololak, owner of the service station, testified as follows: On October 30, 1976, at approximately 9 p.m., a man, identified by Pololak in court as defendant Seals, walked into the station, asked for change for the cigarette machine and then walked toward the cigarette machine in the building. A 1971 brown and beige Oldsmobile with two occupants then came into the station and stopped at the gas pump nearest to the station building. The driver, identified by Pololak in court as defendant Kirkwood, told Pololak to fill up the tank and then got out of the car and asked Pololak to check the oil. The other occupant remained in the back seat of the car. Kirkwood opened the hood of the car and then walked toward the office. Pololak then asked Kirkwood to shut off the engine and if it was all right if Pololak shut off the engine and Kirkwood nodded. Pololak stuck his hand through the open window and turned off the engine. As he turned to leave, the man in the back seat pointed a rifle at Pololak and said, "Don't move, give me your money." Seals then got in the back seat of the car, and Kirkwood got in the front on the driver's side.

Pololak gave the man with the rifle $18 and then took a .38-caliber revolver out of his pocket and fired three or four shots at the man with the rifle. Pololak saw Kirkwood turn and it looked like he was reaching for something in his belt so Pololak shot him once or twice. After the shots were fired, Kirkwood drove out of the station south on Western Avenue. Pololak ran inside to call the police but as he did, a police car pulled into the station. Pololak told the officers what had happened and gave them his gun. Shortly thereafter, Pololak and his employee, Jimmy Young, went to the police station and looked at the mug books for approximately 1½ hours but did not identify anyone. Approximately two to three hours after the shooting, Pololak went to Jackson Park Hospital with two detectives and saw a dead man in the emergency room. Pololak identified the dead man as the person who had been in the back seat of the car and who had the rifle. Pololak then went into another room and saw a wounded man whom he identified to the officers as the driver of the car. Pololak returned to the police station, viewed a lineup consisting of five men, and identified Seals as the passenger in the car.

Pololak testified further that the service station was well lit with fluorescent lights on top of the pumps, overhead lights, lights on the building and street lights on Western Avenue. Pololak testified on cross-examination that the incident occurred between 9 and 9:15 p.m.; that he did not see either Kirkwood or Seals display a weapon; that the rifle was a .22-caliber with a barrel approximately two feet long, and that during the incident he saw his employee, Young, run around the side of the building.

Jimmy Young testified as follows: On October 30, 1976, he was working for Andrew Pololak. At approximately 9:10 p.m. Young came from the back room where he was washing, across the bay area and into the office. Young saw a 1970 or 1971 brown Oldsmobile next to the first set of pumps, and Pololak was standing next to the car. Young started to go into the washroom, the door to which was open, but a man, identified by Young as defendant Seals, was standing in the washroom. Young viewed Seals for about 30 seconds from a distance of about three feet. Young then walked out and saw the man in the back seat of the Oldsmobile pointing a gun at Pololak's stomach and another man, identified by Young as Kirkwood, standing on the driver's side of the car. Young walked toward the bay area and heard someone from the office area say, "Hold it." Young then ran toward the back of the building and jumped over a fence. Young heard five or six shots and then came back toward the station where he saw Pololak on the telephone and saw a police car pull into the station. Young told the police what had happened and then went to the police station and viewed photographs. Young went home but later returned to the police station to view a lineup. Young identified Seals in the lineup. On

cross-examination Young testified that there was no altercation between the parties; that when he saw the rifle, the hood of the car was up, the motor was stopped and the nozzle of the gas pump was in the back of the car; and that he did not see Seals with a gun and he did not see Seals take any cash from the office cabinet.

Robert Cozzi, a Chicago police officer, testified that on October 30, 1976, he and his partner, Kalemba, were assigned to investigate the robbery of Pololak's service station. At approximately 10 p.m. Cozzi went to the station and saw Pololak and Young and took them to the police station where they viewed photographs. Young left and Cozzi, Kalemba and Pololak went to Jackson Park Hospital where they observed the body of Oliver Bonner in the emergency room and George Kirkwood in another room. After Pololak identified Kirkwood as the driver of the car, Cozzi placed Kirkwood under arrest. Approximately 45 minutes later, Cozzi observed in the waiting room a man who fit the description of one offender and he arrested the man, identified as Seals, and transported him to headquarters. Cozzi then called Young and requested him to come to the station to view a lineup. Young and Pololak viewed a lineup of five men and both made an identification.

Richard Berry, a Chicago police officer, testified that on October 31, 1976, he and his partner were called to 1526 East 75th Street in Chicago, which is one block from the emergency room of Jackson Park Hospital, to investigate a suspicious automobile. Officer Berry observed a brown Oldsmobile which had blood on the rear seat and floor and a hole in the vinyl roof. There were no occupants, and the doors and windows were secured. Berry requested by radio verification of the registration and license plate and then called a tow truck.

Norbert Rajewski, a Chicago police officer, testified that on November 1, 1976, he and his partner examined a 1971 or 1972 Oldsmobile at the auto pound. Officer Rajewski observed a hole in the rear roof on the driver's side and blood on the back seat. Rajewski found two live .22-caliber cartridges on top of the rear ashtray on the left side of the car and a spent bullet lodged in the rear side panel. Rajewski inventoried the cartridges and bullet and transported them to the crime lab.

Richard Chenow, a Chicago police officer, testified that he examined the two bullets removed by the medical examiner and he examined the .38 revolver given to the police by Pololak and determined that the bullets were fired from the revolver.

It was stipulated by the parties that if Dr. Yuksel Konacki, a medical examiner for Cook County, were called, he would testify that he performed an autopsy on the person later identified as Oliver Bonner; that the cause of death was bullet wounds in the chest and neck; that two bullets were removed from the body; and that an analysis of the blood

showed the presence of 2.17 per cent ethanol, and under the law in Illinois the person would be presumed to be intoxicated.

Defendant Thomas Seals testified on his own behalf as follows: On October 30, 1976, at approximately 9 p.m. Seals was at a service station on Western Avenue with Kirkwood and Bonner. Kirkwood had been driving, and he asked the attendant to fill the tank. Seals, who had been riding in the front seat, got out, asked the attendant for change and then went into the office. Seals bought a package of cigarettes and used the washroom, and as he was coming out of the washroom, five or six shots were fired by the attendant from the driver's side of the car. Seals did not know why the shots were fired. Seals did not observe James Young. After the shooting, Seals got into the car and heard Kirkwood say, "The man's crazy, let's get out of here, he's going to kill us all." Kirkwood drove out of the station with the hood still up and after about one block he passed out. Bonner had also passed out. Seals then put the hood down and drove to the emergency room of Jackson Park Hospital. After a man helped him get Kirkwood and Bonner out of the car, Seals was told to move the car, so he parked it on 75th Street. Seals then went to the waiting room where he was arrested about one hour later.

On cross-examination Seals testified that prior to going to the service station he had been at his uncle's house for a wedding reception. Kirkwood and Bonner were also present, and at approximately 8:30 Kirkwood asked Seals to go with him and Bonner to pick up Bonner's friend on the west side. Seals did not see a rifle. When he got to Jackson Park Hospital after the shooting incident, Seals called his uncle, but he did not call the police.

Officer Robert Cozzi testified for the defense that at approximately 10 p.m. on the night of the shooting he had a conversation with Pololak during which Pololak stated that the man with the rifle called him over to the car and asked for money, and that the man who had requested change got into the back seat of the car prior to the shooting and before Pololak gave the man with the rifle any money.

Defendant George Kirkwood testified on his own behalf as follows: On October 30, 1976, he had been at his brother's house for a wedding reception. At about 8 p.m. Bonner, whom he had known for three or four months, asked Kirkwood to pick up Bonner's friend who lived at Lake and Pulaski on the west side. Kirkwood asked Seals to go along and they then left at approximately 8:30 p.m. Kirkwood drove while Seals sat in the front seat and Bonner sat in the back. Kirkwood was driving north on Western Avenue when he decided to get some gas; he had just passed a station, so he turned around and then pulled into the station facing south. Kirkwood told the attendant to fill up the tank and then he got out of the car, raised the hood and told the attendant to check the oil. Seals had gone

into the gas station. As Kirkwood was checking the battery, he heard an argument and swear words and then three or four shots. Kirkwood then came around the front of the car to see where the shooting was coming from, and he was at the front tire when he was shot by the attendant. Kirkwood managed to get into the car, then Seals got in the front passenger side and Kirkwood drove out of the station south on Western Avenue. Kirkwood drove about one block, then turned east and pulled over, telling Seals to take him to the hospital because he was shot. Kirkwood then passed out and woke up in the hospital. Kirkwood did not see the attendant give money to Bonner, and he did not see a rifle or bullets in the car.

Robert Kleinschmidt, a Chicago police officer, testified as follows: On October 30, 1976, at approximately 9:15 p.m. he was working with his partner in the vicinity of 734 South Western. Kleinschmidt heard six shots and observed smoke blowing across Western Avenue from a gas station. Kleinschmidt pulled into the station and saw Pololak come running out of the office waving his hands "frantically." Pololak said he was just robbed by three males and they fled in a car going south on Western. Kleinschmidt went after the car and then returned 10 to 15 minutes later and had a conversation with Pololak. Pololak told Kleinschmidt that a male Negro walked into the station and asked to use the bathroom and bought a package of cigarettes; then a car pulled in and Pololak went out to fill the tank; the driver asked Pololak to check the oil and Pololak opened up the hood but the engine was running; the man who had purchased the cigarettes then got into the car and when Pololak asked the driver to shut off the engine, the male in the back seat pulled out a rifle and demanded money; Pololak gave him $18 and then pulled out a weapon and fired several shots into the back seat and at the driver. Officer Kleinschmidt testified on cross-examination that when he pulled into the station, the lights were on and one of the gas hoses was lying on the ground. Pololak gave Kleinschmidt a partial license number of the car.

Dale Shimanek testified for the State on rebuttal as follows:[1] On October 30, 1976, he worked at a service station located at 2323 North Damen, Chicago. At approximately 8:40 p.m. he and another employee, Sam Fowler, were in the office getting ready to close the station when a car pulled up to the gas pump closest to the building. The car was a 1971 or 1972 Oldsmobile, brown with a beige top, and there were three occupants, two in the front and one in the back seat. Fowler went out to the car and the two men in the front seat got out and came into the office. Shimanek identified Kirkwood as the driver and Seals as the passenger in the front seat. Each defendant used the washroom and then Kirkwood

---

[1] Mr. Shimanek's testimony concerns an incident at a service station which is separate from the offense charged in the case at bar.

asked Shimanek to look at a tire he had in the trunk of the car, which he did. At this time Fowler was pumping gas into the car. Shimanek then returned to the office and Kirkwood and Seals told him Fowler wanted him. Shimanek went outside and he saw the man in the back seat pointing a rifle at Fowler. Kirkwood pushed Shimanek toward Fowler, and the man with the rifle asked for money. Kirkwood took some money out of Shimanek's hand. Seals then came out of the office carrying Shimanek's coin changer and a package of soda. The man with the gun told Fowler and Shimanek to get on the ground, which they did, and then Kirkwood told them to get up and turn around. The three men then drove off south on Damen, and Shimanek called the police. Shimanek told the officers the car was black or brown and that he was not able to get a license number because the plate was bent over. On December 1, 1976, Shimanek viewed a lineup and identified Kirkwood and Seals. Sam Fowler testified to substantially the same facts as Shimanek except that on December 1, 1976, Fowler viewed a lineup, identified Kirkwood as the driver of the car and picked out another man who was not involved.

Defendants then presented several witnesses in rebuttal who testified that they saw Kirkwood and Seals at the wedding reception on October 30, 1976, and that defendants left at approximately 8:30 p.m.

It was then stipulated between the parties that if officers Grimm and Savage were called, they would testify that on October 30, 1976, at approximately 8:40 p.m. they went to 2323 North Damen and talked to Shimanek and Fowler and received information that three offenders in a 1971 brown or black Oldsmobile, license unknown, robbed the station of $50, a coin changer and soft drinks and then fled southbound on Damen; one offender displayed a small caliber rifle.

Based on the foregoing evidence, the jury found defendants guilty of armed robbery. The trial court entered judgment on the verdict and sentenced each defendant to seven years in the Department of Corrections. A post-trial motion was denied.

I.

Defendants initially contend that they were denied a fair trial by the admission of evidence that defendants were involved in another armed robbery some 30 minutes before the armed robbery in question. Defendants argue that the evidence of the other offense was highly prejudicial and should not have been admitted since there was no issue of identity of defendants and since specific intent to commit armed robbery need not be proved. The State contends that fefendants waived any error in the admission of the evidence by their failure to object to the testimony of Shimanek and Fowler regarding the prior armed robbery and by their failure to specify such alleged error in the post-trial motion. Alternatively,

the State argues that the evidence was properly admitted to show a common design or *modus operandi.*

■■ The failure to make a proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike the evidence after its admission, giving specific reasons for the objection or motion to strike, generally constitutes a waiver of the right to object. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817.) Further, the failure to raise an issue in a written post-trial motion results in waiver of that issue for purposes of appeal. (*People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6.) In the case at bar defendants did not object to the admission of testimony regarding another armed robbery and did not specify the admission of such evidence as error in their post-trial motion. Thus, defendants have waived the issue for purposes of appeal.

The waiver rule is not absolute, and under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) substantial defects are not waived if the interests of justice require review. (*Foster*, at 380.) However, we find that the admission of the evidence of the other offense was not a substantial defect.

■■ Evidence of crimes other than the one for which defendant is being tried is generally not admissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) However, exceptions to this general rule have been established. The court in *McDonald* stated at page 455:

> "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. [Citations.] In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. [Citations.]"

The record in the case at bar indicates that the evidence of the prior robbery was admitted for the limited purpose of showing intent and a common scheme or *modus operandi.* Defendants denied any involvement in the armed robbery and denied seeing a rifle in the back seat of the car. As rebuttal, the State introduced the evidence of the prior armed robbery, which was similar in mode to the complaining witnesses' version of the incident in the instant case. Both robberies involved service stations and occurred near closing time. Both robberies involved three men in a brown 1971 or 1972 Oldsmobile and in both the two men in the front seat got out of the car while the one in the back seat held the rifle and announced the robbery. The factual similarities between the crime

charged and the other offense were strong and sufficient to make the evidence of the other offense relevant as proof of the existence of a common design or *modus operandi.* (See *People v. Nelson* (1974), 17 Ill. App. 3d 224, 308 N.E.2d 122, *appeal denied* (1974), 56 Ill. 2d 584.) Defendants contend it was error to admit the evidence of the other offense as evidence of intent because armed robbery is a general intent crime and it is not necessary to prove specific intent. (*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244.) While it is true that the State was not required to prove specific intent, the State was required to prove that defendants had the general intent to commit armed robbery and thus the evidence was admissible to show intent. Where evidence of other crimes is relevant, the probative value of such evidence must be weighed against its prejudicial impact, and where the latter outweighs the former, the evidence should be excluded. (*People v. Gonzales* (1978), 60 Ill. App. 3d 980, 993, 377 N.E.2d 91.) However, this decision is left to the sound discretion of the trial court. In view of the similarities between the incidents, we conclude that the trial court in the case at bar did not abuse its discretion in admitting the evidence. We note that the jury was instructed that the evidence of other crimes was received solely on the issue of intent and thus the evidence was not to be considered as proof that defendants had a propensity toward criminal conduct.

## II.

Defendants next contend that the trial court erred in admitting the .22-caliber cartridges into evidence because the State failed to disclose in their answer to discovery the recovery of such cartridges. The State contends that there was no showing of surprise or prejudice to defendants because the State's answer to discovery specifically stated that "bullets and casings" might be introduced into evidence.[2]

Where the State fails to furnish physical evidence in compliance with discovery, the admission of the evidence is within the sound discretion of the trial court and its admission is not error absent a showing of prejudice or surprise. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 286, 365 N.E.2d 576, *appeal denied* (1977), 66 Ill. 2d 633; *People v. Jones* (1973), 13 Ill. App. 3d 684, 687, 301 N.E.2d 85, *appeal denied* (1974), 56 Ill. 2d 584.) In *Houck* the State did not specifically list in their answer to discovery defendant's jacket but did list "materials" and offered the defense an opportunity to examine the "materials." The court in *Houck* held that there was no error in admitting the jacket into evidence because there was

---

[2] The State contends also that defendants waived this argument by failing to include the specific issue in their post-trial motion. However, defendants objected to the evidence at trial and stated in their post-trial motion that the trial court erred in permitting improper evidence and witnesses. Thus, the issue was preserved for review.

no indication that had the defense acted upon the offer to inspect, such inspection would not have included discovery of the jacket, and further, when the jacket was introduced into evidence, no continuance was requested to examine the jacket. In *People v. Britt* (1974), 22 Ill. App. 3d 695, 318 N.E.2d 138, certain checks and testimony pertaining thereto were admitted into evidence over defendant's objection that the checks were not included in the State's list of physical evidence. The appellate court held that there was no failure to disclose since the State's answer included "miscellaneous papers," and the defense made no effort to have the items particularized nor to inspect them despite an offer by the State to permit inspection. Further, in *Britt* the indictment and a laboratory report made reference to checks taken from defendant. Thus, the court found that the purpose of discovery, which is to prevent surprise and any unfair advantage, was honored.

In the case at bar the State's answer listed "bullets and casings" and stated that all evidence was available for inspection. Defendants did not request that the items be particularized and did not avail themselves of an opportunity to examine the evidence. Further, when the evidence was introduced, no continuance was requested. Thus, there was no showing of surprise or prejudice and the trial court did not err in admitting the evidence. The case was cited by defendants, *People v. Madden* (1977), 52 Ill. App. 3d 951, 368 N.E.2d 384, is distinguishable from the case at bar. In *Madden* the State failed to disclose evidence consisting of a piece of a box. The State's offer to permit the defense to examine all reports in the State's files did not cure the error because the evidence was neither inventoried by police, mentioned in the reports nor preserved for trial. However, the court held that, although it was error to admit testimony concerning the evidence, the error did not require reversal because of the convincing evidence of guilt. In the case at bar the evidence was preserved for trial and there is nothing to indicate that inspection would not have revealed the evidence to defendants.

Defendants further contend that the trial court erred in allowing Officer Rajewski to testify concerning tests conducted on the bullets recovered since the State did not list Officer Rajewski as a witness. The State's answer to discovery did state that personnel from the Chicago police department's crime laboratory might be called to testify but it did not specify any names. Further, the State stated to the trial court that Officer Rajewski's name appeared on two police reports tendered to defendants. The trial court offered defendants an opportunity to interview Officer Rajewski; however, defendants did not avail themselves of the offer and did not seek a continuance.

The trial court has discretion to allow a witness, whose name is not furnished to defendant, to testify and in the absence of a showing of

surprise or prejudice, there is no error in allowing such unlisted witness to testify. (*People v. Jordan* (1967), 38 Ill. 2d 83, 93, 230 N.E.2d 161.) In *People v. Seats* (1979), 68 Ill. App. 3d 889, 386 N.E.2d 879, the court held that a police officer was properly allowed to testify concerning tests conducted on shells recovered by police because defendant was in possession of the police report on the firing test and was made aware of the shells through an answer to discovery and was given an opportunity to examine the evidence. Similarly, in the case at bar, the record shows that defendants were furnished police reports and were aware that personnel from the crime lab would be called to testify. Thus, the trial court did not err in allowing Officer Rajewski to testify.

## III.

Defendants contend that the State failed to prove that they were guilty of armed robbery beyond a reasonable doubt.

The determination of a jury will not be disturbed unless there are facts and circumstances which create a reasonable doubt as to defendant's guilt. (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) The sufficiency of eyewitness identification, the credibility of the witnesses and the weight to be given to their testimony and the inferences to be drawn therefrom are matters within the province of the jury. (*Harris*; *People v. Rogers* (1974), 23 Ill. App. 3d 115, 318 N.E.2d 715.) Although a conviction cannot stand if identification testimony is vague, doubtful and uncertain (*People v. Hughes* (1974), 17 Ill. App. 3d 404, 308 N.E.2d 137), the testimony of a single witness is sufficient to establish guilt beyond a reasonable doubt provided such witness had ample opportunity to observe defendant and such witness is credible. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.) Conflicts in testimony are for the jury to resolve, and minor discrepancies in that testimony do not destroy a witness' credibility. (*People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721.) Further, although mere presence at the scene of a crime does not render a person accountable for the acts of another (*People v. Nugara* (1968), 39 Ill. 2d 482, 487, 236 N.E.2d 693), evidence of conduct showing a design on the part of the accused to aid in a crime renders the accused accountable for the perpetrator's actions. (*Rodgers*, at 722.) Proof of acts showing a common purpose need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of the act. *People v. Minish* (1974), 19 Ill. App. 3d 603, 605, 312 N.E.2d 49.

In the case at bar Pololak testified that he was robbed by three men in a brown and beige 1971 Oldsmobile and that the man in the back seat held a gun to him while the other two men were near or in the automobile. Pololak testified that both defendants were in the automobile when he

gave the man in the back seat $18. The area was well lit, and Pololak viewed defendants for several minutes. Pololak made positive identifications of defendants after the incident. Young, Pololak's employee, testified that he observed the 1970 or 1971 Oldsmobile and saw the man in the back seat holding a rifle at Pololak while another man was standing near the front of the car. Young identified defendant Seals in a lineup. Both defendants testified that they were not involved in the robbery, and they did not know why Pololak started shooting his gun. Clearly, there were questions of credibility for the jury to resolve. We cannot conclude, however, that the evidence was so improbable, unconvincing or contrary to human experience as to raise a reasonable doubt as to defendants' guilt.

## IV.

Finally, defendants contend that the trial court considered incompetent evidence in determining the sentence to be imposed and that this court should reduce the sentences or remand the cause for a new sentencing hearing. Defendants contend that the trial court considered charges that were pending against defendants at the time of their convictions in the instant case.

The imposition of a sentence is a matter of judicial discretion and absent an abuse of discretion, the sentence will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) Prior arrests without convictions are incompetent evidence and cannot be considered by the trial court in sentencing. (*People v. Wilson* (1973), 11 Ill. App. 3d 693, 696, 297 N.E.2d 277.) However, the court in *People v. Schmidt* (1978), 61 Ill. App. 3d 7, 10, 377 N.E.2d 553, held that proof of pending charges is properly presentable in aggravation and mitigation as long as the trial court views the unproven indictments in the proper perspective and does not give them much emphasis. Further, the mere fact that a trial judge before imposing a sentence has knowledge of other arrests is not reversible error. (*People v. Handley* (1977), 51 Ill. App. 3d 68, 74, 366 N.E.2d 405; *Wilson*, at 696.) The appellate court presumes that a trial judge has recognized and disregarded incompetent evidence at the presentence hearing, unless the record affirmatively discloses the contrary. *Handley*; *People v. Gant* (1974), 18 Ill. App. 3d 61, 66, 309 N.E.2d 265.

In the case at bar there is no need to rely on the presumption because the record reflects a conscientious effort by the trial judge to sentence defendants properly. The trial judge in reviewing the presentence reports noted that there were other charges pending against both defendants but stated that he was not taking such accusations into consideration. Further, in reviewing the factors in aggravation, the trial judge found that "the

prior history of criminal activity [was] very slight in each of the defendants' cases." The sentence for armed robbery under the new law (Class X felony) is a minimum of six years and a maximum of 30 years, with a mandatory supervised release term of three years and a fine of up to $10,000. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—7—8.) The seven-year sentences imposed in the case at bar do not show prejudice on the part of the trial judge. Since the record does not establish that the sentences were based on incompetent evidence, resentencing is not required.

Based on the foregoing we affirm the judgment of the circuit court.

Affirmed.

STAMOS and HARTMAN, JJ., concur.