(No. 54586.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. MARTY GLENN STOVER, Appellee.

*Opinion filed February 19, 1982.*

SIMON, J., specially concurring.

Tyrone C. Fahner, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Herbert Lee Caplan, Melbourne A. Noel, Jr., and Carolyn B. Notkoff, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Garry W. Bryan, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Janet Sinder, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Marty Glenn Stover, was charged by information with the crimes of burglary, theft and resisting or obstructing peace officers. The burglary and theft charges were dismissed prior to trial. A jury in the circuit court of

Champaign County found defendant guilty of the offense of resisting or obstructing a peace officer in violation of section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 31—1). The appellate court reversed and remanded for a new trial (92 Ill. App. 3d 542), holding that a defense witness, who is a former codefendant, was improperly impeached by the use of his guilty plea to the same offense for which defendant was being tried. The court further held that the prosecutor's inquiry into defendant's previous acquaintance with the arresting officer was error. We allowed the State leave to appeal.

Two issues are raised on appeal: (1) May a witness be impeached by evidence that he pleaded guilty to the same misdemeanor offense with which defendant is charged? (2) Was it error for the prosecutor to inquire into defendant's previous acquaintance with the arresting officer?

On October 10, 1979, police officers Doty, Thurman and Wolfe went to defendant's apartment to arrest him and his brother, Randy. Deputy Doty was dressed in his official uniform, and Investigator Thurman wore plain clothes. The record is silent as to the attire of Deputy Wolfe.

There is conflicting evidence as to what occurred during the course of the arrest. The officers testified that they announced their purpose prior to entering the apartment. They further stated that defendant ran to the rear of the apartment, at which time Doty pursued him and attempted to handcuff him. A scuffle ensued, during which the officer "kneed" the defendant in the chest area. Defendant eventually ceased resistance.

At the conclusion of Doty's direct examination, he described in detail the outfit he wore on the day of defendant's arrest. He testified that he had on his uniform, an official hat, and a number of badges identifying him as a deputy sheriff. Further, he stated that he was wearing an equipment belt which contained a holster and weapon, handcuffs, and a nightstick. After eliciting this testimony,

the prosecutor asked Doty whether he had been acquainted with the defendant prior to this incident. An objection to the question was overruled, and Doty responded "yes."

Defendant's testimony indicated that he did not resist Doty. He claimed that he was walking toward the rear of the apartment to leave for his mother's nearby residence and consult her about the matter. Doty allegedly followed him into the kitchen, pushed him up against the wall, and handcuffed him.

Randy Stover also testified for the defense. During cross-examination, he stated that he was not told he was under arrest prior to being handcuffed. The prosecutor then asked if he pleaded guilty to a resisting-arrest charge arising out of the same incident. Defendant objected, and the court requested a side-bar conference. Thereafter, the judge overruled the objection. The grounds upon which defendant objected are not disclosed in the record. Following the judge's ruling, Randy admitted that he entered a guilty plea to the charge. The prosecutor then asked if he had not just told the jury that he was never informed he was arrested. Defendant objected on the basis that the question was asked and answered. The objection was overruled, and Randy responded "yes." During closing argument, the State emphasized the alleged inconsistency between Randy's testimony and his prior guilty plea.

The jury found defendant guilty of resisting or obstructing Deputy Doty, but not guilty of resisting Investigator Thurman, who had been dressed in plain clothes. Defendant was sentenced to one year's probation, with the condition that he spend 15 weekends in jail and pay a $100 fine and court costs.

A threshold question concerns the reviewability of defendant's contention that his brother was improperly impeached with evidence of his prior guilty plea. As noted earlier, defendant objected to this testimony, but the record is silent as to the reason. However, the specific ground for

the objection was included in his post-trial motion. A primary purpose of the post-trial motion is to allow trial judges an opportunity to consider the litigants' arguments and assess his rulings. (*People v. Adkisson* (1980), 83 Ill. 2d 1, 7-8; *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50.) Since the alleged error may have been specifically asserted at the unrecorded side-bar conference and was specifically stated in the post-trial motion, we do not find that the objection was waived. See *People v. Lykins* (1979), 77 Ill. 2d 35, 38; *People v. Precup* (1978), 73 Ill. 2d 7, 19.

Defendant relies on *People v. Montgomery* (1971), 47 Ill. 2d 510, for the proposition that a codefendant cannot be impeached by evidence that he was convicted of a misdemeanor which does not involve dishonesty. In *Montgomery,* this court adopted proposed Federal Rule of Evidence 609 as the standard governing impeachment by evidence of a prior conviction. Although a slightly different version of Rule 609 was ultimately adopted for use in the Federal courts, we have adhered to the rule as originally proposed. (See *People v. Spates* (1979), 77 Ill. 2d 193, 200; *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 587-88.) This rule provides, in relevant part (Proposed Fed. R. Evid. 609(a)):

> "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere,* is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (47 Ill. 2d 510, 516.)

In the instant case, there is no question that the conviction fails to meet either test enunciated in *Montgomery.* Resisting or obstructing a peace officer is a misdemeanor which

clearly does not involve dishonesty or a false statement.

The State, however, contends that the *Montgomery* decision is inapplicable because evidence of the guilty plea has relevance independent of its use as a prior conviction. Relying on *People v. Sullivan* (1978), 72 Ill. 2d 36, it argues that the guilty plea should be admissible for impeachment purposes as a prior inconsistent statement.

In *Sullivan*, it was recognized that evidence that a codefendant pleaded guilty to the same offense for which defendant stands trial is admissible for purposes of impeaching the codefendant. (72 Ill. 2d 36, 42; see Annots., 48 A.L.R.2d 1004 & 1016 (1956), and cases cited therein.) This principle, considered within the context of the case, related to impeachment by a prior conviction, and merely articulates the holding in *People v. Montgomery* (1971), 47 Ill. 2d 510. The guilty plea involved in *Sullivan* related to a *felony* offense, which is otherwise admissible for impeachment purposes. Thus, this case does not support the State's contention that a guilty plea, inadmissible under *Montgomery* as evidence of a prior conviction, may nevertheless be admissible as a prior inconsistent statement.

"A defendant who is separately tried is entitled to have his guilt or innocence determined upon the evidence against him without being prejudged according to what has happened to another." (*People v. Sullivan* (1978), 72 Ill. 2d 36, 42.) Although a witness' prior convictions may be admissible to attack his credibility, admissibility is limited to the defined standards set forth in proposed Federal Rule 609. The State should not be allowed to circumvent this rule by labeling a guilty plea as evidence of a prior inconsistent statement. To condone this practice would virtually eviscerate the *Montgomery* holding.

Further, the jury was not cautioned to disregard the improper evidence. Indeed, the prosecutor consistently emphasized, in his closing argument, that defendant's brother pleaded guilty to the offense in question. The implication

was that defendant's guilt could be gauged accordingly. Under like circumstances, it has been held that evidence of a codefendant's guilty plea constituted reversible error. (*People v. Sullivan* (1978), 72 Ill. 2d 36.) Similarly, it cannot be said here that the erroneous admission of the evidence did not prejudice defendant's case. We therefore hold that, under these circumstances, evidence of the witness' prior guilty plea constituted reversible error, entitling the defendant to a new trial. See *People v. Godsey* (1978), 74 Ill. 2d 64, 73.

The final issue relates to the prosecutor's inquiry into defendant's previous acquaintance with the arresting officer. The State first contends that the question was probative of the issue of defendant's knowledge that Doty was a police officer. Since knowledge is an essential element of the offense charged, it is argued that the deputy's testimony was relevant. However, as defendant asserts, his knowledge of Doty's status was already clearly established. The police officer testified at length as to his official attire on the day of the arrest. Therefore, defendant's knowledge was no longer at issue.

The State next argues that the question did not provide a basis from which the jury could infer that defendant had previously engaged in illegal conduct. It has been held that evidence that the arresting officer was previously acquainted with defendant does not necessarily imply a criminal record. (*People v. Rogers* (1940), 375 Ill. 54, 59.) However, under the circumstances of this case, there is no apparent reason why the prosecutor would inquire into defendant's previous acquaintance with Doty unless an implication of prior criminal activity was intended. We trust that on retrial such inquiry will not recur.

For the reasons stated herein, the appellate court judgment is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:

I disagree with the majority that the defendant's witness was improperly impeached.

The defendant and his brother, Randy Stover, were both charged with resisting a peace officer, a misdemeanor under Illinois law (Ill. Rev. Stat. 1979, ch. 38, par. 31—1). At the defendant's trial, Randy testified that the arresting officers had not informed them that they were under arrest. His testimony, however, was impeached by his admission on cross-examination that earlier he had pleaded guilty to the charge, a plea which the State argued was inconsistent with his testimony at trial.

The defendant now relies on *People v. Montgomery* (1971), 47 Ill. 2d 510, to support his contention that Randy Stover was improperly impeached. The majority accepts this argument, notwithstanding the State's contention that the plea constituted a prior inconsistent statement and therefore was outside the ambit of *Montgomery*. I believe the court may have been too hasty in rejecting the State's argument.

*People v. Montgomery* held that impeachment by prior conviction is proper only if the conviction so used was for either a misdemeanor involving dishonesty or a felony, and the trial judge determines that its probative value substantially outweighs the risk of undue prejudice. Convictions for misdemeanors not involving dishonesty are excluded altogether; the trial judge is afforded no discretion to allow them into evidence. The court modeled the rule on proposed Federal Rule of Evidence 609 and has since applied it in such cases as *People v. Spates* (1979), 77 Ill. 2d 193, and *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585.

I believe the court in *People v. Montgomery* used the words "impeachment by prior conviction" as a term of art. The rule was meant to apply only to impeachment by evidence of general bad character and not to other kinds of

impeachment, such as by evidence of a prior inconsistent statement. It prohibits suggestions by counsel that the witness is dishonorable and generally unworthy of belief as evidenced by his criminal conviction unless the conviction was for a very serious crime or one closely associated with the characteristic of dishonesty. The connection between less serious crimes not involving dishonesty and the truthfulness of the witness' testimony is thought to be too weak to justify the risk that jurors, in their zeal to find the truth in the midst of conflicting testimony as expeditiously as possible, might overemphasize the witness' conviction to the detriment of their function as fact finders.

The rule should not be applied so that parties are forbidden to point out that the witness previously contradicted his present testimony or that the witness is biased, merely because the prior inconsistent statement or the source of the bias happens to be evidence of a prior conviction for a misdemeanor. Such impeachment evidence may be crucial in establishing the falsity of the witness' testimony, far more valuable than mere proof of bad character. Its value may outweigh the risk that the jury may misuse or overemphasize the information. It therefore must not be mechanically excluded from consideration.

The problem with extending *People v. Montgomery* to cover impeachment by proof of prior inconsistent statement, bias, or the like should be apparent. Assume a criminal case in which the State's star witness has been out to get the defendant, a former prosecutor, ever since the defendant prosecuted him on a charge of misdemeanor assault. It can hardly be argued that the defendant would be precluded from cross-examining the witness for bias. Similarly, if a defense witness in a criminal trial attempts to bolster his credibility by falsely testifying that he is such a law-abiding citizen that he has never committed any crime and never even received a speeding ticket, when in fact he has had 50 such tickets and has pleaded guilty to

charges of assault five times, it seems unsupportable to prohibit examination on such an issue. Yet if the rule announced in *People v. Montgomery* were to be applied to all attempts at impeachment, as the majority apparently advocates, the evidence would have to be excluded.

*United States v. Johnson* (5th Cir. 1976), 542 F.2d 230, in interpreting Federal Rule of Evidence 609, which like the rule in *Montgomery* was derived from proposed Federal Rule of Evidence 609, provides support for my conclusion that *Montgomery* is inapplicable in the case now before us. In *Johnson*, a Federal appellate court held that the prohibition against the use of felony convictions that are more than 10 years old which Rule 609 establishes does not apply when the fact of the conviction tends to establish a motive for lying or contradicts statements made by the witness when testifying. The court stated:

"We do not believe Rule 609 was meant to cover this particular species of impeachment use of a prior conviction. Rule 609 was crafted to apply in those cases where the conviction is offered only on the theory that people who do certain bad things are not to be trusted to tell the truth. Here the evidence had a different, surer value in that it directly contradicted the position taken by the witness." 542 F.2d 230, 234-35.

The notes of the Senate Committee on the Judiciary, which reviewed the proposed Federal rules of evidence, indicate that proposed Rule 609 was not meant to apply to all prior criminal convictions offered to impeach a witness regardless of the theory upon which they were submitted. Although not a model of clarity, the notes appear to state that notwithstanding proposed Rule 609, impeachment by proof of motive, knowledge and the like are still permissible even though the impeachment requires proof of a prior conviction. The notes also state that, again notwithstanding the proposed rule, a defendant's misrepresenta-

tions concerning the existence or nature of prior convictions may be met with rebuttal evidence including records of such prior convictions. Those records may also be offered to rebut a defendant's representation that he could not have committed the crime because of his lack of propensity to commit such deeds. (S. Rep. No. 1277, 93d Cong., 2d Sess. (1974), U.S. Code Cong. & Ad. News 7051, 7061.) Unfortunately, the use of guilty pleas as prior inconsistent statements is not discussed. I believe this is not because the proposed rule was meant to prohibit them, but rather because the committee did not foresee at the time that a guilty plea might be so used.

Moreover, Illinois courts have held *People v. Montgomery* inapplicable to impeachment by means other than proof of general bad character and propensity to lie. In *People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 717, for example, the court refused to prohibit proof of the defendant's previous speeding violations, because the defendant, who was on trial for involuntary manslaughter, had testified on direct examination that he had had no previous speeding violations. Holding that the *Montgomery* rule was not applicable, and instead relying on *People v. Nastasio* (1963), 30 Ill. 2d 51, *cert. denied* (1964), 377 U.S. 911, 12 L. Ed. 2d 181, 84 S. Ct. 1173, a case decided under the pre-*Montgomery* rule against using convictions for non-infamous crimes in impeachment, the court stated:

> "It was entirely proper for the State to impeach him by contradiction of his own testimony given on direct examination. The State was entitled to correct the false impression given by defendant's direct examination regarding his alleged lack of *** speeding violations." 21 Ill. App. 3d 706, 717.

Accord, *People v. Brown* (1978), 61 Ill. App. 3d 180, 184; *People v. Johnson* (1976), 42 Ill. App. 3d 194, 198; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 452.

Similarly, impeachment by evidence of bias has been

held not to be precluded by the *Montgomery* rule or by *Montgomery*-type rules. In *People v. Galloway* (1974), 59 Ill. 2d 158, the State's case against an accused narcotics peddler was based solely on the testimony of a witness with a long arrest record. The charges stemming from her most recent arrests, for theft and armed robbery, were stricken on the State's motion within weeks of her taking the witness stand against the defendant. The court said:

"While neither evidence of an arrest nor indictment may ordinarily be admissible to impeach credibility generally, an arrest or charge of a crime may be shown or inquired into, where it reasonably could tend to show that the witness's testimony might be influenced by interest, bias, or motive to testify falsely." (59 Ill. 2d 158, 163.)

*Galloway* was based on *People v. Mason* (1963), 28 Ill. 2d 396, a case decided before *Montgomery* but still during a period in which mere arrests could not be used to impeach a witness' credibility. The conclusion in *Mason* was identical to that in *Galloway*.

*Allen v. City of Ottawa* (1980), 80 Ill. App. 3d 1032, demonstrates that the rule in *Galloway* and *Mason* applies in all cases, not merely in the case of a criminal defendant. In *Allen,* the defendant city of Ottawa sought to impeach plaintiff's witness with evidence that he had been arrested by Ottawa police on 10 or more occasions. This, the defendant contended, demonstrated bias. In rejecting plaintiff's argument based on *Montgomery* and approving admission of the evidence, the court stated:

" '[A] witness *** in a civil case, may have a motive to testify falsely about a particular matter. No useful purpose would be served in undertaking to enumerate even some of the innumerable motives that may exist. Suffice it to say that evidence of such motive is to be distinguished from that which merely tends to discredit the witness gener-

ally.' " 80 Ill. App. 3d 1032, 1037, quoting, *People v. Mason* (1963), 28 Ill. 2d 396, 402, quoting, 3 Wigmore, Evidence sec. 967, at 186 (1962 Supp.).

This rule has been followed extensively. (See, *e.g., People v. Eddington* (1979), 77 Ill. 2d 41, 45-46; *People v. Vagil* (1973), 9 Ill. App. 3d 726, 729; *People v. Kellas* (1979), 72 Ill. App. 3d 445.) All of these cases were decided after this court decided *People v. Montgomery.* In *Kellas,* the appellate court discussed at length the difference between impeachment by evidence of a prior conviction used to prove general bad character and unreliability and impeachment by evidence of a prior conviction used to prove bias. It discussed *People v. Montgomery* only in the section of the opinion dealing with the former. The opinion makes it clear that convictions inadmissible under *People v. Montgomery* may nonetheless be admissible to prove bias.

The meaning of these Illinois cases is clear. While *People v. Montgomery* governs the ordinary case of impeachment by prior conviction, it does not govern cases in which the conviction is offered for some purpose other than to generally discredit the witness' character. A conviction that shows the witness may be biased or contradicts specific testimony by the witness is far more probative of the truthfulness of the witness' testimony than a conviction that merely impeaches his character. Similarly, a guilty plea that is inconsistent with a particular statement made by the witness while testifying has far greater value in impeaching a witness than a mere attempt to show that because he has been convicted of a crime his general trustworthiness must be doubted. The cases cited above indicate that the delicate balance of interests arrived at in *People v. Montgomery* should therefore not apply. I regret that the majority has chosen to ignore the wisdom they contain.

In general, our society embraces John Milton's phi-

losophy that truth will ultimately triumph over falsity and that there is therefore no need to suppress any information, true or false. The law of evidence, however, suppresses concededly relevant and often concededly true information in an effort to find the truth. It is thought to be the price we pay for speedy trial by jury. The theory behind it holds that while truth may triumph over falsity in the long run, 12 jurors, none of whom are experienced at making such decisions, may not be able to sift through conflicting and often emotionally charged evidence and reach the proper verdict in the time they have. Some evidence may even hinder them. Nevertheless, it is a serious and potentially dangerous departure from our general philosophy. More facts tend to be better than fewer facts. A jury cannot function properly if it is needlessly deprived of relevant information. This court must not, therefore, engage in overkill in its effort to rid the courtroom of unduly prejudicial evidence.

Hard and fast rules prohibiting the introduction of evidence without regard to its probative value are not uncommon. It is important to understand, however, that the ultimate issues in any evidence question are: Is the evidence relevant to a material issue and is its probative value in establishing that point likely to outweigh the risk that a jury will misuse or overvalue it? Hard and fast rules like that in *Montgomery* are simply the result of experience. Certain situations present themselves so often that it becomes apparent that, in such a situation, the probative value of the evidence will never outweigh the risk of undue prejudice. Extending such a rigid rule of exclusion to include broad classes of situations for which it was not intended and for which the probative value of the evidence has not been shown to be consistently lacking in the face of the risk of undue prejudice should be carefully avoided.

My own analysis of the issue is less rigid than the majority's. Under Illinois law, prior convictions of the

accused are completely prohibited for some purposes (*People v. Harvey* (1957), 12 Ill. 2d 88, 91) and allowed only if the probative value is not outweighed by the risk of undue prejudice for others (*e.g., People v. Montgomery* (1971), 47 Ill. 2d 510; *People v. Kirkwood* (1980), 82 Ill. App. 3d 252). No less delicate a treatment should be afforded convictions of accomplices for the crime in issue. I believe the proper approach to this question of first impression involves two questions: whether Randy Stover's guilty plea was in fact a prior inconsistent statement and whether its value in discrediting the witness outweighs the risk of undue prejudice to the defendant.

My view is that Randy Stover's guilty plea was in fact a prior inconsistent statement. A guilty plea admits all facts alleged in the indictment that constitute elements of the offense. (*People v. Langford* (1946), 392 Ill. 584.) Randy Stover's plea thus specifically admitted that he knew he was under arrest, although not necessarily that he was so told. A prior inconsistent statement need not be so inconsistent with the witness' testimony, however, that it belies any harmonious interpretation, no matter how unlikely. Rather the test that is usually applied is that the statement must have a reasonable tendency to discredit the direct testimony on a material matter. (*People v. Brown* (1980), 91 Ill. App. 3d 582; *People v. Thomas* (1979), 72 Ill. App. 3d 186; *People v. Rainford* (1965), 58 Ill. App. 2d 312.) The possibility that Randy Stover may have been aware that he was being arrested without being told, therefore, does not prevent his plea from constituting a prior inconsistent statement. The fact that Randy Stover's assertion of guilt may have been false and made under pressure is not relevant. Any evidence may be false. The witness can be given a chance to explain it. Moreover, the guilty plea was not introduced to prove that Randy Stover was guilty, but only that he had contradicted his testimony in the past.

The trial judge in this case apparently determined that the probative value of Randy Stover's guilty plea in impeaching his testimony outweighed the risk of undue prejudice to the defendant. I see no abuse of discretion here. (See *People v. Kirkwood* (1980), 82 Ill. App. 3d 252.) In fact, in *People v. Sullivan* (1978), 72 Ill. 2d 36, this court noted in *dictum* that a guilty plea by an accomplice may be used to impeach the accomplice's testimony. Surely the trial judge could not have abused his discretion in allowing such evidence in this case.

I nonetheless concur in the majority's judgment. Because I believe it was error to allow officer Doty to testify that he was acquainted with the defendant, I, too, would remand this cause to the trial court for a new trial.